Second degree forgery; sentence: six months' imprisonment with three and one-half years' probation.
On May 3, 1979, a loan application was made by appellant with Postal Financial Services, an Indiana-based mail order lending institution, in the name of appellant's roommate, Michael Brannock. A check dated May 24, 1979, for $1,459.52 and made payable to Brannock was mailed by Postal to Brannock. The check was later endorsed and used to purchase an automobile. The check bore the endorsement of both Brannock and the appellant. The appellant was indicted for forging Brannock's name on Postal's check.
Mr. James Wolph, general manager of Postal Financial Services, identified both the loan application and the check previously described. He stated that he was custodian of the above records, and that they were maintained in the normal and ordinary course of business. Both exhibits were admitted into evidence.
Mr. Wolph identified a check dated November 27, 1979, drawn by the appellant and made payable to him for $126. He stated that the check was received in Postal's office as payment on the loan account allegedly established by Brannock. The check was returned to Postal as the drawer's account held insufficient funds to pay it. Wolph had retained the check in his office since its return. The check was admitted into evidence. Wolph testified that Postal received a couple of payments on the loan account of Brannock, one being the above check drawn by the appellant. He stated that the loan had not been paid.
Mr. Wolph admitted that he did not know who signed the loan application or Postal's check. He did not know if Branock had given the appellant authority to sign his name to either the loan application or the check.
Mr. Lonnie Horne, a used car dealer in Phenix City, testified that he had known appellant for many years. Horne identified *Page 824 
one of his company checks dated May 28, 1979, for $569.27 and made payable to the appellant. The check was the difference between the purchase price of a car bought by the appellant and the loan check from Postal. The appellant had endorsed the check. The check was admitted into evidence. Horne testified that about two weeks prior to appellant's car purchase the appellant had called him and stated that his friend and he were going to get some money and "when it comes in, I will come up there and buy the car from you."
Mrs. Ada Goodwin, accounts supervisor for David Hirsch, a lawyer practicing in both Alabama and Georgia, testified that between 1:00 p.m. and 2:00 p.m. on November 18, 1980, the appellant and Brannock visited Mr. Hirsch's law office in Columbus, Georgia. They went into Mrs. Goodwin's office where she reviewed Brannock's file on the unpaid loan. She told Brannock the status of a civil suit against him for the collection of the unpaid loan, but she was continually interrupted by the appellant. Appellant attempted to make arrangements for paying the debt, suggesting $30 a week as terms. Mrs. Goodwin stated that she asked Brannock if he could speak for himself, to which the appellant replied, "Well, he is not to pay this, I am. It is my debt. I am the one that took the check when it came in the mail." Mrs. Goodwin inquired as to what he did with the check, to which appellant stated, "Well, I signed Michael Brannock's name to it and took it to Lonnie Horne's used car lot and purchased an automobile." She testified that the appellant said he had "forged" Brannock's name on the check. The appellant also told Mrs. Goodwin that he had used Brannock's name to get the loan. Mrs. Goodwin testified that Brannock stated that he did not make application for the loan, had never seen Postal's check, did not sign it and received no proceeds from it.
After her conversation with the appellant and Brannock, Mrs. Goodwin informed Mr. Hirsch of the situation and escorted them into his office. She remained with them during Mr. Hirsch's meeting with them. Mrs. Goodwin stated that the appellant repeated the substance of his prior conversation with her to Mr. Hirsch. The appellant added that if this situation were made public he would lose his seat on the school board. The appellant reluctantly left Hirsch's office while Mrs. Goodwin, Brannock and Hirsch remained. Mrs. Goodwin stated that Hirsch placed a telephone call, apparently to the Russell County District Attorney's Office. Afterward, Mrs. Goodwin took Brannock to the Russell County Courthouse. Mrs. Goodwin testified that prior to leaving the appellant confronted Brannock, shook him and said, "Michael, don't do this. You know this is going to cause me to lose my seat on the school board."
During cross-examination Mrs. Goodwin stated that Brannock was told that a judgment could be taken against him for the unpaid loan. She stated that Brannock asked her to carry him to the courthouse. She also stated that at the time the civil suit against Brannock was filed, she did not have a copy of the back of Postal's check to him illustrating the endorsements.
David Hirsch testified that Postal Financial Services retained him to collect on the open account of Michael Brannock on a contingency fee basis. On November 18, 1980, in response to a letter sent by Hirsch regarding the unpaid loan to Postal, Brannock and the appellant met with him at his office. Mrs. Goodwin was present during the meeting. Hirsch testified that Mrs. Goodwin briefed him concerning the information she had discovered during her conversation with Brannock and the appellant. In response to Hirsch's question, Brannock acknowledged that he had not incurred the debt and did not owe it because the endorsement had been forged. Hirsch stated that the appellant interjected that he would pay $50 a month on the debt, which Hirsch did not accept. Mr. Hirsch informed Brannock of the legal steps he would take if the debt were Brannock's. Hirsch also stated that ethically he had to inform the Russell County District Attorney's Office of the forgery. He requested Brannock to talk with him outside the presence of the appellant. *Page 825 
During this conversation Hirsch informed Brannock of the probable steps the district attorney's office would take and suggested that he immediately inform that office of the situation. He stated that, if Brannock did not tell the truth to the district attorney's office, in all probability that office would charge him with perjury or whatever offenses were applicable. Hirsch called the district attorney's office in Brannock's presence.
Mr. Hirsch stated that Mrs. Goodwin had initially informed him that Brannock knew nothing of the loan until he had been notified by Postal. Mr. Hirsch testified that Brannock stated that he did not sign the check, apply for the loan, or incur the debt. Brannock affirmatively replied to the question of whether the appellant had forged the endorsement.
At the time of the meeting, Hirsch was not aware that the appellant had previously signed Brannock's name on any other papers. He was aware that the appellant was to be sworn as a Russell County school board member that day. Mr. Hirsch's testimony concluded the presentation of the State's case. The appellant offered no testimony to contradict that of the State.
 I
Appellant contends that the trial court erred in denying his motion to exclude the State's evidence based upon its failure to prove a prima facie case.
The elements of forgery are generally: (1) a writing of such a nature that it is a possible subject of forgery; (2) which writing is false — which may be accomplished by the fraudulent application of a false signature to a true instrument, or a real signature to a false instrument; and (3) was made with the intent to defraud. Finney v. State, 348 So.2d 876
(Ala.Cr.App.), cert. denied, 348 So.2d 878 (Ala. 1977); Powersv. State, 333 So.2d 205 (Ala.Cr.App. 1976); and cases cited therein. In addition, in the instant case, the State must establish that the appellant was without authority to sign Brannock's name to the check or, though unauthorized, appellant's signing of Brannock's name was done without a bona fide belief in the existence of the authority to do so. Finney,supra.
The essence of forgery is an intent to injure or defraud when the act is done. It is not essential that actual injury result.Finney, supra. The requisite intent need not be proven by positive and direct evidence as it may be inferred by the jury from the evidence before it. McGee v. State, 20 Ala. App. 221,101 So. 321 (1924). The only requirement involving the forged instrument is that it possess "some apparent legal efficacy" and that "there is a reasonable possibility that it may operate to cause injury." Jones v. State, 372 So.2d 892 (Ala.Cr.App. 1979). One found in possession of a forged instrument of which he purports to be the beneficiary, and applying it to his own use, must, in the absence of explanation satisfactory to the jury, be presumed to have forged it or to have been privy to its forgery. Overby v. State, 24 Ala. App. 254, 133 So. 915
(1931); McGee, supra. See also Terrell v. State, 34 Ala. App. 262, 38 So.2d 604 (1949); Tidwell v. State, 33 Ala. App. 198,31 So.2d 513 (1947).
There is no doubt that the instrument in question possessed "some apparent legal efficacy" and the "reasonable possibility that it may operate to cause injury." The statements of Brannock to both Mrs. Goodwin and Mr. Hirsch reveal a false signature made by the appellant and a lack of authority on the appellant's part to sign Brannock's name. Furthermore, the admissions by the appellant to both Mrs. Goodwin and Mr. Hirsch clearly evidence his belief that he lacked authority to sign Brannock's name to the check.
After a close and careful examination of the evidence presented in this case, we find that the State proved a prima facie case of both forging an endorsement and uttering a forged instrument contrary to § 13-4-61, Code of Ala. 1975. McCray v.State, 23 Ala. App. 378, 125 So. 793 (1930). Consequently, the trial court properly denied the appellant's motion to exclude the State's evidence. *Page 826 
 II
Appellant contends that the trial court erred in refusing to give several of his written requested charges.
Charges I, V, VI, VII, VIII and IX, dealing with the State's burden of proving each element of the crime beyond a reasonable doubt, were fairly and substantially covered by the trial court's oral charge and given requested charges of the appellant. Thus, they were properly refused. Section 12-16-13, Code of Ala. 1975. Charges X, XI and XII contained the legal concept of ratification. No evidence was presented to justify charging the jury on that concept. Therefore, those charges were properly refused. Charges XIV and XV, dealing with reasonable doubt, were properly refused as they were fairly and substantially covered by the trial court's oral charge and given requested charges of the appellant. Section 12-16-13,supra.
AFFIRMED.
All the Judges concur.