A jury found Terry Earl McClain guilty of forgery in the second degree of a check in the face amount of $200.00 in violation of Alabama Criminal Code § 13A-9-3, which classifies the offense as a Class C felony, which is punishable in accordance with § 13A-5-6 (a)(3) at imprisonment for "not more than 10 years or less than 1 year and 1 day." The court sentenced him to imprisonment for thirteen months, suspended his sentence, and placed him on supervised probation.
The check involved as allegedly forged was purportedly a check drawn by Alford K. Hardy on Maxwell-Gunter Federal Credit Union, as shown by the printed material on the face of the check. The blank spaces had been filled in by pen and ink as of 3/30/83, the amount of the check and the purported signature of the maker as Alford Hardy.
Alford K. Hardy testified as the first witness in the case. He testified he was a student at Auburn University at Montgomery in March 1983, residing on the campus, and that his roommate was Terry McClain. He further testified that several days before March 30, 1983, he learned that a large number of blank checks were missing from the place or places he had been keeping them and about that time he learned that he "did not have as much money" in his account with the Maxwell-Gunter Federal Credit Union as he "thought" he did.
The next witness was Mrs. Betty Taylor, who was operations manager for the Eastdale Branch of the Central Bank and testified that on April 9, 1983, she received the deposits from the night before for the particular branch, that among the items were State's Exhibit No. Two, which was a copy of the deposit slip to the account of Terry Earl McClain for $200.00, and the above-described check. The check had not been endorsed by the payee or anyone else and for that reason was not payable by the Credit Union upon which it was drawn. The deposit ticket showed a deposit to the account of Terry Earl McClain on April 8, 1983, of a check for $200.00.
Detective James Wicker of the Montgomery Police Department testified he was called to investigate the case and that defendant voluntarily gave him specimens of his handwriting, which specimens he turned over to Dr. Richard Roper, the then-Administrator of the Montgomery Laboratory of the Department of Forensic Sciences. Dr. Roper testified, after having been duly qualified as an expert in the field of the identity of writers of questioned documents, that the handwriting on the face of the check involved was written by the same person writing the specimens of handwriting handed to him by Detective Wicker.
Terry Earl McClain took the stand in his own defense and testified very emphatically and convincingly that on April 8, 1983, he went from the Auburn University Campus in Montgomery soon after he ate breakfast on his way to Greenville, Alabama, and from there to attend a prom that night at Carousel Acres in Andalusia. He said that on his way there he picked up his *Page 614 
date, living at Brantley, and that, upon arrival at the prom, pictures were taken of him and his date and others, which were introduced in evidence as defendant's exhibits. The pictures convince us, as they doubtless convinced all others concerned, by reason of the formal attire of all whose pictures were taken and introduced in evidence when considered with the rest of the evidence, that defendant was not the person who deposited the check involved with the Central Bank on April 8, 1983. Defendant was supported as to his whereabouts elsewhere on April 8 by members of his family and others. The State evidently found that the evidence would be so strong in this respect that the State formally elected in open court, before any testimony by defendant's witnesses was taken, not to proceed under Count Two of the indictment, in which defendant was charged with possession or utterance of the forged check with intent to defraud, in violation of § 13A-9-6 of the Code of Alabama, leaving Count One, the count upon which he was found guilty by a jury, as the only count in the case. I.
Appellant's first contention for a reversal is to the effect that by reason of the absence of any endorsement, or purported endorsement by the payee of the check, the check "lacked apparent legal efficacy and carried no reasonable possibility of causing harm." Several authorities are cited in appellant's brief, such as Johnson v. State, 412 So.2d 822 (Ala.Crim.App. 1981); appellant is incorrect in the conclusions drawn in his brief as follows:
 ". . . There was no endorsement of any Carl Jenkins on the back. According to all bank employees who testified, the check could not be processed because the check had not been endorsed properly and because it was attached to McClain's deposit ticket and was not made payable to McClain. Thus, the check possessed no apparent legal efficacy and carried with it no reasonable possibility of causing harm. The trial court, therefore, committed reversible error in not granting Appellant's motions for judgment of acquittal made during and after the trial."
Appellant would be correct in his argument if applied to the second count of the indictment, which was dismissed. The count of the indictment upon which defendant was convicted, however, did not charge defendant with the possession or utterance of a forged check, but with the forgery thereof, by the words in the indictment that defendant did "falsely make, complete or alter a written instrument which was or purported to be, or which was calculated to become or represent if completed, a check, draft, note or other commercial instrument" etc. The forgery was completed by the writing on the face of the check purporting to show that it was a check signed by Alford Hardy. Such forged check possessed apparent legal efficacy and carried with it a reasonable possibility of causing harm, even though financial harm to the purported signer of the check, as well as everyone else, was thwarted by employees of the bank, in their observance that the check had not been endorsed by the purported payee.
Contrary to the argument of appellant's counsel that his contention is supported by Johnson v. State, we note that what we have already said as to the issue under consideration is fully in accord with Johnson v. State and is not discordant to any of the other authorities cited in appellant's brief.
 II.
By appellant's second issue, the contention is made in the brief of his counsel that the trial court erred in refusing the following charge requested in writing by defendant:
 "12. In order to be the subject of forgery, an instrument must possess some apparent legal efficacy and there must be a reasonable possibility that it may operate to cause injury."
In arguing this issue in the brief of counsel for appellant, he pursues the same line *Page 615 
of thought expressed in his argument as to Issue I. He states:
 "In the instant case, the check involved had not been endorsed properly. The check showed Carl Jenkins as the payee and Hardy as the drawer. There was no endorsement of any Carl Jenkins on the back. According to all bank employees who testified, the check could not be processed because the check had not been endorsed properly and because it was attached to McClain's deposit ticket and was not made payable to McClain. Thus, the check possessed no apparent legal efficacy and carried with it no reasonable possibility of causing harm."
Appellant relies largely upon the same authorities, includingJohnson v. State, supra, as to this issue that he relies upon as to the first issue, adding Wiggins v. State, 347 So.2d 543
(Ala.Crim.App.), cert. denied, 347 So.2d 546 (Ala. 1977), which holds, as urged by appellant, "The trial court must fairly apprise the jury of the nature of the charges against the defendant in a criminal case." The trial court complied with this requirement of law by reading to the jury the pertinent language of Alabama Criminal Code, § 13A-9-3 (a)(1) as follows:
 "A person commits the crime of forgery in the second degree if, with intent to defraud, he falsely makes, completes or alters a written instrument . . .:
 "(a) check, draft, note or other commercial instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right. . . ."
The trial court dealt lengthily and comprehensively in its explanation of the law in its oral charge and fully complied with the requirement stated in Wiggins v. State. Furthermore, we note that, as a matter of law, the particular instrument possessed apparent legal efficacy and that there was a reasonable possibility that it would operate to cause injury. No error prejudicial to defendant resulted from the refusal of the charge.
 III.
By the next issue presented in appellant's brief, he contends the trial court "erred in admitting evidence of appellant's previous possession of a forged instrument where intent to defraud was not an issue." He concludes his argument on the issue by the following paragraph:
 "In the instant case, McClain's defense was alibi — he did not do the deed and was nowhere in the vicinity at the time the prosecution alleged it was committed. Nevertheless, the trial court permitted the State of Alabama to introduce evidence that McClain had previously possessed a forged instrument for the purpose of showing intent to defraud. Since intent was not a disputed issue, Appellant maintains the trial court, in doing so, committed reversible error."
Although the defense of defendant was not based on any claim by him that whatever he did that constituted the alleged forgery was not done with intent to defraud, intent to defraud was a necessary issue throughout the trial of the case, as to which the burden of proof was upon the State. Therefore, contrary to appellant's present contention, the State had a right to offer in evidence any testimony legally admissible for the purpose of showing that defendant had an intent to defraud. Appellant's third issue is without merit.
 IV.
The next issue presented by appellant is thus captioned in the brief of his counsel:
 "THE PHOTOSTATIC COPY OF THE DEPOSIT SLIP WAS ADMITTED ERRONEOUSLY IN VIOLATION OF THE BEST EVIDENCE RULE."
In support of this contention, C. Gamble, McElroy's AlabamaEvidence, § 255.01 (4) (3d Ed. 1977) is cited, wherein it is stated that a photostatic copy "is not, on that account solely, the equivalent of the original" in satisfaction of the best evidence rule, and all the cases cited by Judge McElroy in footnote 1 are cited in appellant's brief. Not to be overlooked, however, is the next sentence of Judge McElroy's treatise, which states, "This rule is to be distinguished *Page 616 
from those statutes which specifically provide that photostatic copies of certain specified documents are admissible in evidence equally with the original.2" Footnote 2 cites, "Ala. Code, tit. 7, § 415 (1)-415 (3) (1940) (Recomp. 1958) (Business Records Exception;)." The cited subsection of Ala. Code, Tit. 7 (Recomp. 1958), now Code of Alabama 1975, §12-21-44, provides in part as follows:
 "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, if it was made in the regular course of any business and it was in the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter, may be photostated, or it may be photographed or microphotographed on plate or film; and such photostat, photographic or microphotographic plate or film, or print thereof, whether enlarged or not, shall be deemed to be an original record and shall be admissible in evidence in proof of said act, transaction, occurrence or event in all instances that the original record might have been admissible and shall be presumed to be a true and correct reproduction of the original record it purports to represent. All other circumstances of the making of such writing or record, or of such photostat, photographic or microphotographic plate or film or print thereof, whether enlarged or not, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility."
A teller who opened the depository on the morning of April 9, testified in pertinent part as follows:
 "Q. Does that photographic copy of the deposit slip that you got in your hand on that morning, does this photographic copy of that original deposit slip truly and accurately depict the deposit slip as it was that morning?
 "A. Yes, sir. Because this is my teller's stamp here. (Indicating.) And I stamped it in order to look at it.
 "Q. This stamp that you are pointing to, it is your stamp?
"A. Yes.
"Q. Excuse me. A photocopy of your stamp?
"A. Yes.
 "Q. Is this check and is this photocopy of the deposit slip in substantially the same condition as it was at the time when you first received the check and deposit slip in your hand?
"A. Yes, sir."
The photographic copy of the deposit slip, State's Exhibit No. 2, was not subject to defendant's objection that its submission would be in violation of the best evidence rule.
 V.
By the next issue found in the brief of counsel for appellant, he charges that the trial court erred "in allowing the copy of the deposit slip into evidence because it was not produced before trial."
Soon after the commencement of any evidence on behalf of the State and during the first part of the testimony of Mrs. Taylor, the Operations Manager for the Eastdale Branch of the Central Bank, the prosecuting assistant district attorney, asked her, "May I see the deposit ticket?" Thereupon the following occurred:
 "MR. GOGGANS [Defendant's attorney]: I would like to object to any testimony regarding the deposit ticket on Terry E. McClain's account. Our first objection is that it was not produced pursuant to the motion to produce and order of the Court entered heretofore. Mr. Travis [Assistant District Attorney] has stated to the Court that he had a copy of it but did not have the original and cannot find the original. But a copy was not produced. The first time I saw it was in the Courtroom and the first time I heard about it was shortly before I came in the Courtroom this morning. *Page 617 
 "Is that right, Mr. Travis, as far as statement of facts?
 "MR. TRAVIS: Statement of facts as given is correct. I never had the original document.
 "THE COURT: Why didn't you give him that right there that you have had?
 "MR. TRAVIS: This was given to me outside by Investigator James Wicker.
"THE COURT: Today?
"MR. TRAVIS: Today.
 "THE COURT: Have you had what you are holding prior to today?
"MR. TRAVIS: No, sir. Never had a check.
". . .
 "THE COURT: If he knew about it, that is one thing. If he did not —
 "MR. TRAVIS: I had knowledge that a deposit ticket existed. It's common knowledge when you make a deposit, you are going to have a deposit check.
"THE COURT: What did the Order say?
 "MR. TRAVIS: That he is entitled to documents, records, and all evidence which defendant is Constitutionally entitled.
 "THE COURT: How are you prejudiced? You've had since when? When did you show it to him?
"MR. GOGGANS: When I came up here just a minute ago.
 "MR. TRAVIS: I did not have it but just five minutes before the striking of the jury.
 "THE COURT: Give it to him now, and if you can — I do not know why you are prejudiced. You have it now.
 "MR. GOGGANS: One reason I think, maybe, I don't know, because I have just seen it and had it.
 "THE COURT: Well, we will sit here while you make your determination.
 "Whereupon the proceedings resumed in open court. State's Exhibits number One and number Two were marked for identification purposes.)
 "Q. (By Mr. Travis): Mrs. Taylor, you have stated that part of your responsibilities include working on Saturdays and taking the night deposits; is that correct?
"A. That is right."
It is regrettable that there apparently was not a meeting of the minds between counsel for the parties respectively, as there should have been, but we are convinced, as the trial judge apparently was convinced, that no prejudice resulted to defendant by reason of the failure of the Assistant District Attorney to show defendant's attorney the deposit slip sooner than it was shown to defendant's attorney as disclosed above. We determine this issue of defendant adversely to him.
 VI.
By his caption of the last issue presented in brief of counsel for appellant, he states:
 "THERE WAS A FATAL VARIANCE IN THAT THE PROSECUTION FAILED TO PROVE THAT THE OFFENSE OCCURRED AT THE TIME SPECIFIED IN THE RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT."
In the State's "Response to Motion for More Definite Statement," we find:
 "Count 2 of the indictment of this cause charges Defendant with criminal possession of a forged instrument in the second degree. The alleged offense occurred at approximately 6:00 o'clock P.M. on 4/8/83 at Central Bank of Montgomery, 5417 Eastdale Mall, Montgomery, Alabama."
Counsel for appellant does not contend that the check involved was not deposited "at approximately 6:00 P.M. on 4/8/83." He continues to argue that defendant did not deposit the check, that whatever deposit was made of the check was made by some other individual. We agree, as we have heretofore indicated, that defendant was elsewhere at the time the check was deposited. The time the check was deposited was pertinent to the second count of the indictment, as to which the State elected not to proceed, but it was not material as to the first count of the indictment, which was *Page 618 
based on the alleged forgery of the fact of the check. Appellant's final issue is without merit.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.