[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1117 
The appellant, David Eugene Davis, was charged with two counts of capital murder for the deaths of Kenneth Douglas and John Fikes. Count I charged him with murder made capital because two people were murdered by one act or pursuant to one scheme or course of conduct, § 13A-5-40(a)(10), Ala. Code 1975, and Count II charged him with murder made capital because he committed it during a robbery in the first degree or an attempt thereof, §13A-5-40(a)(2), Ala. Code 1975. In exchange for the State dismissing Count II, he pled guilty to and was convicted of Count I. The trial court engaged the appellant in a thorough colloquy, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969), and Rule 14.4, Ala. R.Crim. P., during which the appellant admitted his guilt and expressed his desire to enter a guilty plea. The appellant entered his guilty plea, and the matter was presented to a jury so the jury could determine whether the State had proven its case against the appellant beyond a reasonable doubt, as required by § 13A-5-42, Ala. Code 1975. After the jury returned *Page 1118 
a verdict of guilty, the penalty phase proceedings began. By a vote of eleven to one, the jury recommended that the appellant be sentenced to death by electrocution. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
We have reviewed the proceedings before and during the guilt phase of the trial for jurisdictional errors. § 13A-5-42, Ala. Code 1975. Further, we have reviewed the penalty phase proceedings for any error, whether preserved or plain, as required by Rule 45A, Ala. R.App. P., which provides as follows:
 "In all cases in which the death penalty has been imposed, the court of criminal appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
In Haney v. State, 603 So.2d 368, 392 (Ala.Cr.App. 1991), aff'd,603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925,113 S.Ct. 1297, 122 L.Ed.2d 687 (1993), we stated as follows:
 "The Alabama Supreme Court has adopted federal case law defining plain error, holding that `"[p]lain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings,' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367
(1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981))."
"[T]he plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" UnitedStates v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046,84 L.Ed.2d 1, 14 (1985), quoting United States v. Frady, 456 U.S. 152, 163,102 S.Ct. 1584, 1592, 71 L.Ed.2d 816, note 14 (1982). To find plain error, a reviewing court must find that "the claimed error not only seriously affected `substantial rights,' but that it had an unfair prejudicial impact on the jury's deliberations." Young,470 U.S. at 18, 105 S.Ct. at 1047, 84 L.Ed.2d at 14.
 I.
The appellant's first argument is that the evidence was insufficient to support the jury's finding that the State met its burden of proving the elements of capital murder beyond a reasonable doubt. First, he argues that there was no evidence that the killings were premeditated. He asserts that the only evidence of his intent to kill the victims was circumstantial and came from his admissions. He further contends that, at the time of the murders, he was too intoxicated to form the specific intent to kill. When moving for a judgment of acquittal, the appellant argued only that the State had not proved that he committed the murders pursuant to one course of conduct. Thus, he did not preserve for review the arguments he raises on appeal.McElroy v. State, 611 So.2d 431 (Ala.Cr.App. 1992). Accordingly, we must review the claims he asserts on appeal under the plain error rule. Rule 45A, Ala. R.App. P.
The evidence introduced at trial showed the following:
At around 9 p.m. on June 23, 1996, the appellant was drinking alcohol with his ex-brother-in-law, Tommy Reed. He told Reed he wanted to kill his ex-wife, from whom he had recently been divorced, and he said he knew where he could get a firearm. He left Reed, and around 10 p.m., he asked two people at a service station for directions to the victims' home. At the time, he was aggressive and seemed to be in a hurry. According to his statements to police, he went to the victims' home and spoke to Kenneth Douglas. At some point, he got into a confrontation with Douglas during which he took a firearm from Douglas and shot him. When he heard another person moving in the *Page 1119 
bedroom, he shot into that room, killing John Fikes. He then started collecting various items belonging to the victims, including several firearms, which he said he intended to sell to obtain crack cocaine. As he was doing so, he noticed a kerosene lantern and decided to set the house on fire.
Around 1:30 a.m. the following morning, a relative of one of the victims noticed that the victims' house was on fire and telephoned 911. Also around 1:30 a.m., the appellant went to Louis Dodd's home and attempted to sell Dodd some of the firearms he took from the victims' home. Dodd described the appellant as being "scared to death" and said he appeared to be "drunk and on drugs." When Dodd told him not to come to his house at that time of the morning asking to sell stolen properly, he told Dodd, "They come from far away." Shortly thereafter, the Trussville Police Department received a complaint about a man walking door-to-door, holding a sawed-off shotgun in one hand and a jug in the other, and asking for gasoline for his vehicle. When they arrived at the scene, the officers recognized the appellant's vehicle and located the appellant. As the officers were trying to arrest the appellant, he dropped the shotgun behind some bushes. The officers testified that the appellant was aware of what was happening as they arrested him and that he probably was not intoxicated to such a degree that he could be arrested for driving under the influence. They also testified that the area where they arrested the appellant was known for drug activity. The officers found numerous items in his vehicle that belonged to the victims.
Tommy Reed, the appellant's ex-brother-in-law, testified that, on June 24, 1996, he talked to the appellant while the appellant was in the Trussville jail. When Reed asked him how bad it was, the appellant responded that it was "real bad" and "more than life." He then said, "I'll see you in heaven."
At trial, some of the witnesses speculated that the appellant was under the influence of drugs and alcohol when he committed the murders.
The medical examiner testified that the victims died from the gunshot wounds.
The appellant first contends that the only evidence of his intent to kill was circumstantial and came from two statements he gave.
 "`In reviewing a conviction based on circumstantial evidence, this court must view that evidence in a light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.'
 "Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1979), citing United States v. Black, 497 F.2d 1039 (5th Cir. 1974). Additionally, circumstantial evidence may form the proof of the corpus delicti; if facts are presented from which a jury may draw a reasonable inference that a crime has been committed, the case must be submitted to the jury. Breeding v. State, 523 So.2d 496, 500 (Ala.Cr.App. 1987)."
MacEwan v. State, 701 So.2d 66, 70-71 (Ala.Cr.App. 1997).
 "`A defendant's guilt may be established by circumstantial evidence as well as by direct evidence. As long as the circumstantial evidence points to the guilt of the accused, it will support a conviction as strongly as direct evidence. In reviewing a conviction based on circumstantial evidence, "[t]he test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable [hypothesis] except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but *Page 1120 
whether a jury might reasonably so conclude."'
 "McMillian, 594 So.2d [1253] at 1263 [(Ala.Cr.App. 1991)] (citations omitted). See also Potts v. State, 426 So.2d 886 (Ala.Cr.App. 1982), aff'd, 426 So.2d 896 (Ala. 1983). This statement of the law refers to cases in which the evidence is entirely circumstantial.
 "`"The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust."'
 "White v. State, 546 So.2d 1014, 1022-23
(Ala.Cr.App. 1989), quoting Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969)."
Jenkins v. State, 627 So.2d 1034, 1040 (Ala.Cr.App. 1992), aff'd,627 So.2d 1054 (Ala. 1993), cert. denied, 511 U.S. 1012,114 S.Ct. 1388, 128 L.Ed.2d 63 (1994). Furthermore, the question of a defendant's intent at the time of the commission of a crime is usually a question for the jury. Crowe v. State, 435 So.2d 1371,1379 (Ala.Cr.App. 1983).
 "In Jones v. State, 591 So.2d 569, 574
(Ala.Cr.App. 1991), this court stated:
 "`"[T]he element of intent, being a state of mind or mental purpose, is usually incapable of direct proof, [and] it may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." Johnson v. State, 390 So.2d 1160, 1167 (Ala.Cr.App.), cert. denied, 390 So.2d 1168 (Ala. 1980). Accord, Fears v. State, 451 So.2d 385, 387 (Ala.Cr.App. 1984); Young v. State, 428 So.2d 155, 158 (Ala.Cr.App. 1982).'
 "Additionally, in Bishop v. State, 482 So.2d 1322, 1326 (Ala.Cr.App. 1985), this court held:
 "`"Intent may be presumed from the act of using a deadly weapon. McArdle v. State, 372 So.2d 897
(Ala.Crim.App.), cert. denied, 372 So.2d 902 (Ala. 1979), and from the character of the assault, including the nature and amount of force used in the fatal injury. Flint v. State, 370 So.2d 332
(Ala.Crim.App. 1979)."
 "`Chaney v. State, 417 So.2d 625, 627
(Ala.Crim.App. 1982). "However, this evidence must be sufficient to allow the jury to conclude, by fair inference, that the appellant was shooting at the person (named in the indictment) in particular with the intent to murder him." Free v. State, 455 So.2d 137 (Ala.Crim.App. 1984). In Underhill on Criminal Evidence, § 540 (3d ed. 1923), we find the following statement regarding proof of intent in an attempted murder charge:
 "`"Thus, as a general rule, the force or violence which was employed must be proven to have been intentional. . . . The intention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from the declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another."'"
Long v. State, 668 So.2d 56, 60 (Ala.Cr.App. 1995).
The appellant also contends that he was too intoxicated to form the specific intent to murder the victims.
 "The question whether a defendant's intoxication rendered it impossible for *Page 1121 
the defendant to form a particular mental state is also a question for the jury. See Ex parte Bankhead, 585 So.2d 112, 121 (Ala. 1991). Evidence of intoxication, whether voluntary or involuntary, is admissible when it is relevant to negate an element of the offense charged. § 13A-3-2(a). `Voluntary drunkenness does not excuse crime, yet its excessiveness may produce such a mental condition as to render the intoxicated person incapable of forming a specific intent.' Lovett v. State, 491 So.2d 1034, 1039 (Ala.Cr.App.), cert. denied, 491 So.2d 1039
(Ala. 1986) (quoting State v. Massey, 20 Ala. App. 56, 58, 100 So. 625, 627 (1924)). The degree of intoxication required to establish that a defendant was incapable of forming an intent to kill is a degree so extreme as to render it impossible for the defendant to form the intent to kill. Ex parte Bankhead, 585 So.2d at 121. The law concerning intoxication resulting from drug use is the same as intoxication resulting from alcohol. Hooks v. State, 534 So.2d 329 (Ala.Cr.App. 1987)."
Williams v. State, 710 So.2d 1276, 1338 (Ala.Cr.App. 1996). To negate the specific intent required for a murder conviction, the degree of the accused's intoxication must amount to insanity.
 "`In an assault and battery case, voluntary intoxication is no defense, unless the degree of intoxication amounts to insanity and renders the accused incapable of forming an intent to injure. Lister v. State, 437 So.2d 622 (Ala.Cr.App. 1983). The same standard is applicable in homicide cases. Crosslin [v. State, 446 So.2d 675 (Ala.Cr.App. 1983)]. Although intoxication in itself does not constitute a mental disease or defect within the meaning of § 13A-3-1, Code of Alabama 1975, intoxication does include a disturbance of mental or physical capacities resulting from the introduction of any substance into the body. § 13A-3-2. The degree of intoxication required to establish that a defendant was incapable of forming an intent to kill is a degree so extreme as to render it impossible for the defendant to form the intent to kill. . . .'
"Ex parte Bankhead, 585 So.2d 112, 121 (Ala. 1991)." Smith v.State, 646 So.2d 704, 712-13 (Ala.Cr.App. 1994) (emphasis added).
The trial court properly allowed the jury to determine the effect of the appellant's alleged intoxication on his ability to form a specific intent. His "`conduct and demeanor immediately after the crime provided a reasonable inference of sanity.'"Smith, 646 So.2d at 713 (quoting Cunningham v. State,426 So.2d 484, 491 (Ala.Cr.App. 1982)). The appellant's attempt to hide the crime by burning the house, the fact that he appeared to Dodd to be "scared to death" even though he appeared to be "drunk and on drugs," his statement to Dodd about the guns being from "far away," and his attempt to hide the shotgun from the police when he was arrested all indicate that he was not so intoxicated at the time of the offense that he was unable to appreciate the criminality of his conduct. The evidence he offered in support of his intoxication defense was contradicted by evidence offered by the State. By finding the appellant guilty of the offense charged, the jury obviously concluded that he had not proved his intoxication defense, and we see no reason to disturb this conclusion.
Furthermore, the circumstances surrounding the victims' deaths, the appellant's statements to Reed that he knew where he could get a firearm, the use of a deadly weapon, and the victims' injuries were sufficient to support the conclusion that the appellant had the specific intent to kill the victims. Although there is no direct evidence that the appellant intended to murder the victims when he entered the house, the evidence supports the conclusion that he intentionally murdered them once he was there. The appellant committed the murders during the course of, and in furtherance of, a robbery, and the acts were part of a continuous chain of events. Harris v. State, 671 So.2d 125
(Ala.Cr.App. 1995). *Page 1122 
Thus, it was not necessary for him to intend to murder the victims when he entered the house. Accordingly, viewing the evidence in a light most favorable to the State, we find that the State presented sufficient evidence of the appellant's guilt and that the trial court properly submitted the case to the jury. There is ample evidence in the record to support the jury's conclusion. Therefore, we will not disturb its verdict in this regard.
 II.
The appellant's second argument is that the trial court improperly admitted into evidence six of his prior convictions. During the penalty phase, the appellant called several witnesses who testified concerning his good character and good reputation, apparently in an attempt to establish a nonstatutory mitigating circumstance under § 13A-5-52, Ala. Code 1975. Section13A-5-45(g), Ala. Code 1975, provides as follows:
 "The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51
and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting this issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence."
The State offered evidence of six prior convictions to rebut the evidence concerning the appellant's good character and reputation. Accordingly, the trial court properly allowed the State to introduce evidence of the appellant's prior convictions for the limited purpose of rebutting mitigating evidence the appellant offered to show his good character and reputation. SeeHallford v. State, 548 So.2d 526 (Ala.Cr.App. 1988), aff'd,548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354,107 L.Ed.2d 342 (1989).
The appellant contends that the admission of evidence of the prior convictions was more prejudicial than probative. To determine whether the evidence of the prior convictions was more prejudicial than probative, we must examine the specific facts of this case. Hobbs v. State, 669 So.2d 1030 (Ala.Cr.App. 1995). As discussed in Part III of this opinion, the trial court properly instructed the jury on the limited purpose of admitting the prior convictions. The trial court lessened the risk of prejudice to the appellant from the admission of the prior convictions by immediately giving that limiting instruction. Malone v. State,659 So.2d 1006 (Ala.Cr.App. 1995). Therefore, we find that the probative value of the evidence of the prior convictions outweighed its prejudicial effect.
Finally, we note that, during the penalty-phase opening arguments, well before the State sought to introduce evidence concerning the prior convictions, defense counsel admitted that the appellant probably had "seven or eight prior convictions." That admission was consistent with the defense's strategy of arguing that the appellant was a good, mild-mannered person when he was not using drugs and/or alcohol, that his personality changed when he used drugs and/or alcohol, and that all of his prior convictions were drug- or alcohol-related.
Based on the foregoing, we find no error in the admission of evidence of the prior convictions.
 III.
The appellant's third argument is that the trial court's instruction that the evidence of the six prior convictions was being admitted for the limited purpose of rebutting mitigating evidence offered by the appellant was confusing in relation to the instruction regarding the use of a prior robbery conviction as an aggravating circumstance. He further argues that the jury may have been confused as to the proper "use" of the six prior convictions. The appellant did not object to the trial *Page 1123 
court's instructions concerning these prior convictions. Accordingly, we must review the instructions under the plain error rule. Rule 45A, Ala. R.App. P.
When the State offered the prior convictions into evidence, the trial court instructed the jury as follows:
 "The Court admits into evidence State Exhibits No. 27 through 32 — those exhibits being certified copies of prior convictions of the defendant for crimes involving moral turpitude or felony offenses.
 "At this time, I'm going to instruct you that certain prior offenses are being offered by the State. The purpose of these prior offenses that are marked Exhibits No. 27 through 32, and they will be clipped together — the purpose of those offenses as evidence may not be considered by you as an aggravating circumstance. The purpose of those exhibits being offered into evidence and questioning concerning those offenses goes rather to the State's burden of disproving by a preponderance of the evidence certain facts and allegations made by the defendant in mitigation of a sentence of death.
 "The State is allowed and has a duty to affirmatively disprove by a preponderance of the evidence mitigating circumstances. That is the only purpose [for which] you may consider Exhibits No. 27 through 32. Do not confuse that with Exhibit No. 27 (sic), which is a certified copy of a conviction for robbery in the second degree that was admitted in support of and was admitted as proof of an aggravating circumstance that the State is required to prove beyond a reasonable doubt. It is very important you keep these convictions and their purposes separately. I'm going to go into more detail when it is my job to talk to you again about the law you use in deciding the sentence and the aggravating and mitigating circumstances. When I do, I think what I just explained to you will become just a little bit clearer and you will understand that pigeon-hole each of that evidence would fit into."
(R. 452-54). Later, during its oral charge, the trial court further instructed the jury as follows:
 "As I told you toward the end of this hearing, the State has introduced certain exhibits which are certified copies of prior convictions of the defendant for certain felony offenses. These are Exhibits 27 through 32, and I hope they are in some sort of a clip or something. These exhibits may not be considered by you as aggravating circumstances. That is, as circumstances tending to indicate the defendant should be punished by death. The State introduced these exhibits, rather, in support of their burden of disproving a mitigating circumstance that may exist based on the defendant's prior works or the defendant's good character or prior good reputation, which it is the burden of the State to disprove by a preponderance of the evidence. That was the only purpose for which those exhibits were offered, and the only purpose for which those exhibits may be considered.
 "Now Exhibit No. 26, however, was the certified copy of the robbery conviction which the State introduced in support of proving its aggravating circumstances of the defendant's prior conviction involving the use or threat of violence to a person."
(R. 506-08). As long as the trial court accurately states the law and the facts of the case, it has broad discretion in formulating its instructions to a jury. Land v. State, 678 So.2d 201
(Ala.Cr.App. 1995), aff'd, 678 So.2d 224 (Ala.), cert. denied,519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996); Coral v. State,628 So.2d 954 (Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387,128 L.Ed.2d 61 (1994). In this case, the trial court was careful to distinguish the robbery conviction from the other prior convictions. It explicitly stated *Page 1124 
that the robbery conviction was being used to prove an aggravating circumstance and that the other six convictions were being used to rebut mitigating evidence the defense introduced concerning the appellant's good character or reputation. In addition, the trial court properly defined the State's burden of disproving a mitigating circumstance by a preponderance of the evidence. § 13A-5-45(g), Ala. Code 1975. The trial court correctly stated the law and the facts of the case, and its instructions were not confusing or misleading. Therefore, we find no plain error in the trial court's instructions.
 IV.
The appellant's fourth argument is that the trial court's instruction with regard to extreme mental and emotional disturbance was not specific enough to inform the jury what would constitute a finding of extreme mental and emotional disturbance as a mitigating circumstance. Because the appellant did not object to the instruction at trial, we will review it under the plain error rule. Rule 45A, Ala. R.App. P.
During its instruction concerning mitigating circumstances, the trial court stated as follows:
 "The law also provides a list of mitigating circumstances which you may consider. It is important for your consideration of mitigating circumstances for you to realize that although a list is provided of mitigating circumstances, by law you are not confined to considering only those listed by law as a mitigating circumstance. You may consider any other relevant facts or factors as shown by the evidence as a mitigating circumstance. But of those that are provided by law, the defendant asserts and alleges that there are two mitigating circumstances that exist that are within the list provided by law. The first is the capital felony was committed while the defendant was under the influence of extreme mental or emotional distress.
 "The first mitigating circumstance that I referred to — that the defendant was under the influence of extreme mental or emotional distress is somewhat self-explanatory."
(R. 500-02). We addressed a similar argument in Roberts v. State,735 So.2d 1244 (Ala.Cr.App. 1997), in which we held:
 "A trial court has broad discretion in formulating its jury charge, so long as the instructions accurately reflect the law and relevant facts. When reviewing a claim of error in a jury instruction, the jury charge must be construed as a whole and the language must be construed reasonably. See Carroll v. State, 599 So.2d 1253, 1270 (Ala.Cr.App. 1992), aff'd, 627 So.2d 874 (Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994).
 "After considering the trial court's charge in its entirety, we conclude that the court adequately instructed the jury on intent. The word `intent' is not a term of art or legal jargon. It is a commonly used and understood word with a clear meaning. Moreover, as the United States Supreme Court has recognized:
 "`Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with common sense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.'
 "Boyde v. California, 494 U.S. 370, 380-81, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).
 "In this case, the jurors' common sense understanding was sufficient; the court was not required to define the term. No plain error occurred. See Williams v. State, 710 So.2d 1276
(Ala.Cr.App. 1996)." *Page 1125 
We agree with the trial court that the meaning of extreme mental or emotional disturbance is self-explanatory. Like the term discussed in Roberts, the term "extreme mental or emotional disturbance" is not legal jargon or a term of art. The words are commonly used words with clear meanings, and the jurors' common sense understanding of the meaning of the term could properly be relied upon. Therefore, we find no plain error in this instruction.
 V.
The appellant's fifth argument is that the trial court's instruction regarding the votes necessary to recommend death or life imprisonment without the possibility of parole was confusing. The appellant did not object to this instruction at trial. Therefore, we will review the instruction under the plain error rule. Rule 45A, Ala.R.App. P.
Section 13A-5-46(f), Ala. Code 1975, provides the following regarding the number of votes necessary for a jury to return a sentencing recommendation to the trial court:
 "The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least 10 jurors."
During its penalty-phase jury instructions, the trial court explained the voting process to the jury as follows:
 "You, the jury, are to decide what weight or value is to be given to what particular circumstances and determine the sentence in light of all the other circumstances in evidence in the case. You must do that in your process of weighing these circumstances against each other. After you determine what aggravating circumstances, if any, exist, then your duty, as I said, is to weigh those against any mitigating circumstances in this case. After weighing those, it will be your duty to return a verdict in this case.
 "The weighing equation or the final bottom line is that the aggravating circumstances must outweigh the mitigating circumstances in order to justify a verdict of death. In order to bring back a verdict recommending punishment by death, at least ten of your number must vote for that sentence. In the guilt phase, it required a unanimous verdict. In order to recommend death, a vote of at least ten of your number must support that sentence. In other words, a verdict of death may be returned if it is unanimously agreed by the jury, or if eleven jurors vote for death, and one votes for life without parole; or a verdict of death may be returned if ten of your number vote for a sentence of death and two vote for life without parole.
 "In order to bring back a verdict recommending a sentence of life without parole, there must be a concurrence of at least seven of your number. That is, a majority vote for life without parole would sustain a return of a verdict of life without parole. I think I told you at the outset, I'm not very good at math; but in going down the numbers, you could return a verdict of life without parole if all twelve of you unanimously agreed that is the verdict; or if eleven of you agreed for life without parole and one voted for death; or if ten of you agree for life without parole, and two voted for death. Obviously the same would be if nine of you recommended life without parole, and three death; eight life without parole, and three death; eight life without parole, and four death; or even if seven of you recommended a verdict of life without parole and five of you recommended a penalty of death, your verdict would be life without parole. So a majority vote would determine a verdict of life without parole. A death sentence would by supported by a vote of ten or more of your number. *Page 1126 
 "The fact that you could reach a determination of whether ten or more of you agree to recommend death, or seven or more of you agree to recommend life without parole, you could do that on a single vote as soon as you walk in the jury room. However, that fact should not influence you in any manner to act in haste or without due regard to the gravity of these proceedings. You should hear and consider all the views of your fellow jurors. Before you vote, you should carefully weigh, sift and consider all the evidence and of course, realizing a human life is at stake. You should bring to bear your best judgment on the sole issue which is before you ladies and gentlemen of the jury. The issue is whether the defendant should be sentenced to life without parole or death for the capital offense for which you have found him guilty."
(R. 510-13). This instruction properly summarizes the number of votes necessary to recommend a sentence of death and the number necessary to recommend a sentence of life imprisonment without the possibility of parole, as set forth in § 13A-5-46(f), Ala. Code 1975. The trial court explicitly set forth the possible votes and the verdicts those votes would support. Therefore, we find that the instruction was not confusing.
 VI.
The appellant's sixth argument is that the trial court's re-instruction during the guilt-phase deliberation created pressure on the jury to reach a verdict. Alter the jury had deliberated for three and one-half hours, the trial court gave the following instruction:
 "Ladies and Gentlemen, you began deliberation yesterday afternoon, and you have been back this morning and you have further deliberated for two hours. The allegations in this case are very serious, and don't get the idea I'm telling you not to deliberate. What I want to make sure is that you stay focused on the issues in this case. Your determination at this point is whether there is proof beyond a reasonable doubt that the defendant committed the offense of capital murder. If you do not find such proof beyond a reasonable doubt of the elements of capital murder as I have explained them to you, then you would also consider if the defendant was guilty of any lesser included offenses or whether the defendant was not guilty. What you are to consider — and the only things you are to consider in this case is the evidence that has been brought to you from the witness stand, the exhibits that have been introduced. You may consider the defendant's plea of guilt in this case. You may consider any inference arising from the evidence or lack of evidence in this case in your deliberations. The burden is on the State in this case as I previously told you. The first thing I told you at the beginning of my charge yesterday, however, is there are several things you are not to consider. It would be highly improper for you to consider any issues in this case regarding punishment at this point. That is not your job. You are to only consider the facts of this case and consider rendering one of the verdict forms or a combination of verdict forms I have given you in this case, and the matter of any punishment to be rendered based on any verdict that you might render in this case is a matter for separate consideration at a different time. Confine your discussions and deliberations to the evidence you have heard in this case, the inferences you can draw from that evidence, and the other instructions I have given you. With that in mind, you are to return to the jury room and begin deliberations."
(R. 345-47). Because the appellant did not object to the re-instruction at trial, we must review the trial court's actions under the plain error rule. Rule 45A, Ala. R.App. P.
A trial court may encourage a jury to continue its deliberations and to *Page 1127 
attempt to reach a verdict as long as it does not suggest which way the verdict should be returned and is not threatening or coercive. Miller v. State, 645 So.2d 363 (Ala.Cr.App. 1994). "`The duration of jury deliberations is a matter vested entirely within the discretion of the trial court. See Lake v. State,390 So.2d 1088 (Ala.Cr.App. 1980), cert. denied,390 So.2d 1093 (Ala. 1980), cert. denied, 450 U.S. 1004, 101 S.Ct. 1715, 68 L.Ed.2d 207
(1981); Martin v. State, 29 Ala. App. 395, 196 So. 753 (1940).'"Edwards v. State, 668 So.2d 167, 169 (Ala.Cr.App. 1995) (quotingHollis v. State, 417 So.2d 617, 620 (Ala.Cr.App. 1982)).
 "`The [trial] judge is responsible for giving the jury the guidance by which it can make appropriate conclusions from the testimony. This duty is performed by clearly stating the relevant legal criteria.' United States v. Garrett, 574 F.2d 778, 782 (3d Cir.), cert. denied, 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978). `The purpose of instructing the jury is to focus its attention on the essential issues in the case and inform it of the permissible ways in which these issues may be resolved.' United States v. Ribaste, 905 F.2d 1140, 1143 (8th Cir. 1990).
 "`We have stated that "`[t]he necessity, extent and character of additional instructions are matters within the sound discretion of the trial court.'"
Deutcsh v. State, 610 So.2d 1212, 1218 (Ala.Cr.App. 1992).
We do not believe the trial court's instruction created pressure on the jury to reach a verdict. The trial court did not in any way suggest what verdict the jury should return, and the language of the instruction was not threatening or coercive. Rather, the trial court was simply carrying out its responsibility of guiding the jury in its deliberations, focusing the jury's attention on the issues before it at that time, and making sure it was not considering issues concerning punishment at that time. Defense counsel had mentioned punishment during closing arguments, and it was possible that argument had misled the jurors in their deliberations. Therefore, the trial court did not abuse its discretion in re-instructing the jury during its guilt-phase deliberations.
 VII.
The appellant's seventh argument is that there was insufficient evidence to support a finding as an aggravating circumstance that he committed the murders during the course of a robbery. Because he did not present this claim to the trial court, we will review it under the plain error rule. Rule 45A, Ala. R.App. P.
Section 13A-8-41, Ala. Code 1975, defines robbery in the first degree as follows:
 "(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another.
 "(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he is so armed."
Section 13A-8-43, Ala. Code 1975, provides that:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to *Page 1128 
compel acquiescence to the taking of or escaping with the property."
There was ample evidence to show that the appellant committed the murders during the course of a robbery.
 "`As the Alabama Supreme Court held in Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962), "the fact that the victim was dead at the time the property was taken would not militate [against a finding] of robbery if the intervening time between the murder and the taking formed a continuous chain of events." Clements v. State, 370 So.2d 708, 713
(Ala.Cr.App. 1978), affirmed in pertinent part, 370 So.2d 723 (Ala. 1979); Clark v. State, 451 So.2d 368, 372 (Ala.Cr.App. 1984). To sustain any other position "would be tantamount to granting to would-be robbers a license to kill their victims prior to robbing them in the hope of avoiding prosecution under the capital felony statute." Thomas v. State, 460 So.2d 207, 212
(Ala.Cr.App. 1983), affirmed, 460 So.2d 216
(Ala. 1984).
 "`Although a robbery committed as a "mere afterthought" and unrelated to the murder will not sustain a conviction under § 13A-5-40(a)(2) for the capital offense of murder-robbery, see Bufford v. State, [382 So.2d 1162 (Ala.Cr.App. 1980)], O'Pry v. State, supra [642 S.W.2d 748 (Tex.Cr.App. 1981)], the question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve. Crowe v. State, 435 So.2d 1371, 1379 (Ala.Cr.App. 1983). The jury may infer from the facts and circumstances that the robbery began when the accused attacked the victim and the capital offense was consummated when the defendant took the victim's property and fled. Cobern v. State, 273 Ala. 547, 550, 142 So.2d 869, 871
(1962). The defendant's intent to rob the victim can be inferred where "[t]he intervening time, if any, between the killing and robbery was part of a continuous chain of events." Thomas v. State, 460 So.2d 207, 212 (Ala.Cr.App. 1983), affirmed, 460 So.2d 216 (Ala. 1984). See also Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962); Crowe v. State, 435 So.2d 1371 (Ala.Cr.App. 1983); Bufford v. State, 382 So.2d 1162 (Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala. 1980); Clements v. State 370 So.2d 708 (Ala.Cr.App. 1978), affirmed in pertinent part, 370 So.2d 723 (Ala. 1979).'
"Connolly, 500 So.2d at 63."
Hallford v. State, 548 So.2d 526, 534 (Ala.Cr.App. 1988), aff'd,548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354,107 L.Ed.2d 342 (1989). See also Harris v. State, 671 So.2d 125,126 (Ala.Cr.App. 1995).
The trial court defined robbery and explained that, for the jury to find as an aggravating circumstance that the appellant committed the murders during the course of a robbery, the State was required to prove the existence of that aggravating circumstance beyond a reasonable doubt. Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence from which the jury could find beyond a reasonable doubt that the appellant committed the murders during the course of committing a robbery. Therefore, the trial court's finding of this aggravating circumstance is supported by the evidence.
 VIII.
The appellant's eighth argument is that the trial court's finding as an aggravating circumstance that the murders were committed during the commission of a robbery was inconsistent with its finding as a mitigating circumstance that the appellant lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Specifically, he contends that his capacity to appreciate the criminality of his conduct was so impaired due to intoxication that he could not form the requisite intent to rob *Page 1129 
the victims. Accordingly, he contends that the trial court erred in finding as an aggravating circumstance that he committed the murders during the commission of a robbery. Again, the appellant did not raise this issue before the trial court. Therefore, we will review it under the plain error rule. Rule 45A, Ala. R.App. P.
In finding as a mitigating circumstance that the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, the trial court noted:
 "[T]here is evidence that the defendant was intoxicated with alcohol and/or under the influence of crack cocaine. The Court cannot find by a preponderance of the evidence that this mitigating circumstance does not exist. In consideration of the weight to be accorded this mitigating circumstance, the Court notes that the defendant was not so impaired as to be totally unaware of the criminality of the conduct, or to devise plans and schemes to hide his crime. The defendant's use of the kerosene fire to hide his acts and to inhibit the investigation of the crime scene; his appearance at Dodd's house looking `scared to death' although intoxicated; and his story to Dodd that the stolen guns were from `far away' all indicate a consciousness of the gravity of the offense, even though substantially impaired."
(CR. 5-6). Even though there was testimony that the appellant may have been under the influence of drugs and/or alcohol when he committed the offense, the trial court found that he was not so impaired that he could not appreciate the criminality of his conduct. Therefore, the appellant did not satisfy his burden of proving that he was so intoxicated that he could not form the intent to kill and that his intoxication rose to the level of insanity. Bankhead, supra. However, his burden of proving, as a mitigating circumstance, the impairment of his capacity to appreciate the criminality of his conduct was substantially lighter. In this regard, we noted in Ivery v. State,686 So.2d 495 (Ala.Cr.App. 1996):
 "Ivery contends that the trial court erred by not finding certain alleged statutory mitigating circumstances: specifically, Ivery challenges the trial court's findings that Ivery did not commit the act constituting the capital offense while under the influence of extreme mental or emotional disturbance, see § 13A-5-51(2); that Ivery's ability to appreciate the criminality of his conduct was not substantially impaired or that his ability to conform his conduct to the law was not substantially impaired, see § 13A-5-51(6). We review this issue under the plain error standard.
 "During the sentencing phase of a capital proceeding, a defendant's burden of proof regarding the mitigating circumstance found in § 13A-5-51(6) is substantially less than his burden during the guilt phase, of proving the defense of not guilty by reason of mental disease or defect. See Lewis v. State, 380 So.2d 970, 977 (Ala.Cr.App. 1979) (`the extent of sub-normal mental capacity [shown in support of this mitigating factor] does not have to measure up to the applicable test necessary to show. . . . insanity that makes one incapable of committing a crime'), cert. denied, 370 So.2d 1106 (Ala. 1979); Whisenhant v. State, 370 So.2d 1080, 1095-96 (Ala.Cr.App.), cert. denied, 370 So.2d 1106 (1979) (a finding that a diminished capacity mitigating circumstance exists `may be based on evidence of a lesser standard than is necessary to find insanity')."
686 So.2d at 503. The jury and the trial court rejected the appellant's claim that he was too intoxicated to form the specific intent to commit murder. Therefore, the trial court was justified in finding that the appellant committed the murders during the commission of a robbery. Nevertheless, the trial court found, as a mitigating circumstance, that the appellant's capacity to appreciate the criminality of his conduct was impaired. Under the reasoning of *Page 1130 Ivery, this finding was justified even though the trial court rejected, during the guilt-phase proceeding, his claim that he was too intoxicated to form the specific intent to commit murder. Accordingly, the trial court's findings were not inconsistent.
 IX.
The appellant's ninth argument is that the prosecutor's question to the mother of one of the victims regarding her opinion of the death penalty constituted prosecutorial misconduct and created ineradicable error that prejudiced the jury against him. During the penalty phase, the prosecutor asked Fikes' mother, "Are you asking this jury, after they weigh all the evidence in this case, are you asking them, as a family member of John Fikes, to sentence the defendant to death?" (R. 370). Defense counsel immediately objected and the trial court sustained the objection, stating that it would not allow the witness to answer the question. After the trial court sustained the objection, defense counsel did not raise any further objection, request curative instructions, or move for a mistrial. Therefore, there is no adverse ruling for this court to review.Hardeman v. State, 651 So.2d 59 (Ala.Cr.App. 1994); Rice v. State,611 So.2d 1161 (Ala.Cr.App. 1992). Because the appellant raises this argument for the first time on appeal, we review it under the plain error rule. Rule 45A, Ala. R.App. P.
When reviewing allegedly improper prosecutorial conduct in questioning witnesses, we must consider the impact of the challenged question in the context of the particular trial and not isolation or in the abstract. Henderson v. State,583 So.2d 276 (Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992);Bankhead v. State, 585 So.2d 97 (Ala.Cr.App. 1989). During the trial, the trial court repeatedly instructed the jury that it should base its decision on the evidence presented and not on passion, prejudice, or any other arbitrary factor. We presume that jurors follow the instructions given by the trial court.Taylor v. State, 666 So.2d 36 (Ala.Cr.App.), on remand,666 So.2d 71 (Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996). Reading the prosecutor's question in the context of the entire trial, we conclude that it did not prejudice the appellant's substantial rights. Therefore, we find no plain error in this regard.
 X.
The appellant's tenth argument is that, during the guilt phase of the trial, the State improperly introduced evidence of robbery after dismissing Count II of the indictment. Because he did not raise this argument at trial, we review this contention under the plain error rule. Rule 45A, Ala. R.App. P.
In Rowell v. State, 570 So.2d 848 (Ala.Cr.App. 1990), we held that evidence of uncharged crimes may properly be admitted under the following circumstances:
 "`Evidence of the accused's commission of another crime is admissible if such other crime is inseparably connected with or is a part of the res gestae of the now-charged crime. This rule is often expressed in terms of the other crime and the now-charged crime being parts of one continuous transaction or one continuous criminal occurrence.' C. Gamble, McElroy's Alabama Evidence (3d ed. 1977), § 69.01(3). See also Orr v. State, 462 So.2d 1013, 1015 (Ala.Cr.App. 1984). `Evidence of other crimes is properly admissible as part of the res gestae if all of the criminal acts are part of one continuous criminal adventure by the same party occurring within a matter of hours. Miller v. State, 405 So.2d 41
(Ala.Crim.App. 1981). See also Moseley v. State, 357 So.2d 390 (Ala.Crim.App. 1978); Summers v. State, 348 So.2d 1126 (Ala.Crim.App.), cert. denied, 348 So.2d 1136 (Ala. 1977).' Pettaway v. State, 494 So.2d 884, 886 (Ala.Cr.App. 1986). *Page 1131 
In the present case, this evidence `was intimately connected with the same transaction which is the basis of the State's case. . . . The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge.' Blanco v. State, 515 So.2d 115, 120
(Ala.Cr.App. 1987), and cases cited therein. `The trial court did not err in overruling appellant's objection to the admission of such evidence. No matter how many distinct crimes may be involved, all the details of one continuous criminal occurrence or adventure may be given as part of the offense with which the defendant is charged.' Coleman v. State, 487 So.2d 1380, 1385 (Ala.Cr.App. 1986) and cases cited therein."
570 So.2d at 852. See also Windsor v. State, 683 So.2d 1027,1035-36 (Ala.Cr.App. 1994), aff'd, 683 So.2d 1042 (Ala. 1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545
(1997). In this case, the murders and the robbery were clearly part of one continuous criminal transaction. In fact, there was testimony that, before he went to the victims' home, the appellant stated that he knew where he could get a firearm. Immediately following the murders, the appellant did indeed take several firearms and other items from the victims' home. The robbery was inseparably connected to the murders. Therefore, the trial court did not abuse its discretion in admitting, during the guilt phase, evidence relating to the robbery.
 XI.
The appellant's eleventh argument is that "a court should prohibit accepting a blind or open plea in a capital murder case so that unless a capital defendant wishes to plead to life without parole he is assured that the constitutional safeguards of a complete and comprehensive jury trial are met." Because he did not raise this argument at trial, we must review this contention under the plain error rule. Rule 45A, Ala. R.App. P.
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969), the United States Supreme Court implied that a defendant may plead guilty to a capital offense if he does so knowingly and voluntarily. Alabama has set forth the requirements for accepting a guilty plea in Rule 14.4, Ala. R.Crim. P., and § 13A-5-42, Ala. Code 1975. In this case, the trial court engaged the appellant in a thorough guilty plea colloquy, as required byBoykin and Rule 14.4. After that colloquy, the trial court accepted the appellant's guilty plea pursuant to § 13A-5-42, Ala. Code 1975, which provides as follows:
 "A defendant who is indicted for a capital offense may plead guilty to it, but the state must in any event prove the defendant's guilt of the capital offense beyond a reasonable doubt to a jury. The guilty plea may be considered in determining whether the state has met that burden of proof. The guilty plea shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence. A defendant convicted of a capital offense after pleading guilty to it shall be sentenced according to the provisions of Section 13A-5-43(d)."
Thus, even after a defendant pleads guilty to a capital offense, the State must still prove his guilt to a jury beyond a reasonable doubt. Davis v. State, 682 So.2d 476
(Ala.Cr.App. 1995), cert. denied, 682 So.2d 483 (Ala. 1996); Russov. State, 548 So.2d 1083 (Ala.Cr.App. 1989); Cox v. State,462 So.2d 1047 (Ala.Cr.App. 1985). If the State proves a defendant's guilt, then the defendant is entitled to a full sentencing hearing, just as any other defendant convicted of a capital offense would be. In that hearing, the defendant is entitled to the same constitutional safeguards as any other capital defendant. A capital defendant is provided sufficient constitutional safeguards to assure that his plea is knowingly, understandingly, and voluntarily entered. *Page 1132 
Accordingly, the appellant's argument is without merit.
 XII.
The appellant's twelfth argument is that his trial attorneys were ineffective. In support thereof, he asserts the following grounds:
 "A. Counsel failed to cause a suppression hearing prior to the defendant's plea in regard to his statements which were inculpatory.
 "B. Counsel failed to cause a suppression hearing to be had prior to the defendant's plea of guilty in regard to the search of his clothing and vehicle.
 "C. Counsel allowed the defendant to enter a blind or open plea in a capital murder case where the only possibilities are life without parole or death.
 "D. Counsel failed to object to the jury instruction regarding mental and emotional disturbance.
 "E. Counsel failed to object to the re-instruction by the court during the guilt phase of the case.
 "F. Counsel failed to argue the court's inconsistent findings regarding mitigating and aggravating circumstances.
 "G. Counsel failed to ask for a mistrial in regard to the victim's mother's testimony regarding her feeling about the death penalty in this case.
 "H. Counsel failed to object to the introduction of robbery evidence during the guilt phase of the trial.
 "I. Counsel failed to request a jury charge in regard to wilfulness, maliciousness, premeditation, and deliberation as it relates to intent.
 "J. Counsel failed to challenge the evidence regarding corroboration of defendant's confession.
 "K. Counsel failed to assert the defense of self defense where there was evidence to support it.
 "L. Allowing character evidence in mitigation knowing appellant's prior record would be used for rebuttal was ineffective."
The appellant raises these claims for the first time on appeal. Ordinarily, his claims would be procedurally barred because he did not present them to the trial court first. Brown v. State,701 So.2d 314 (Ala.Cr.App. 1997); Ex parte Ingram, 675 So.2d 863
(Ala. 1996). However, because the appellant was sentenced to death, we will review his claims under the plain error rule. Rule 45A, Ala. R.App. P.; Bush v. State, 695 So.2d 70
(Ala.Cr.App. 1995), aff'd, 695 So.2d 138 (Ala.), cert. denied,522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997).
In arguing that his counsel was ineffective, the appellant bears a heavy burden of proof.
 "To prevail upon a claim of ineffective assistance of counsel, a defendant must satisfy the two components articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by counsel's deficient performance. Strickland, supra. In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203
(1985), the Supreme Court held that the two-part Strickland test applies to challenges to guilty pleas based upon ineffective assistance of counsel."
Holt v. State, 650 So.2d 530, 531-32 (Ala.Cr.App. 1994). That burden is particularly stringent when a defendant enters a guilty plea.
 "`In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, [411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)] and *Page 1133 McMann v. Richardson, [397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)]. The second, or `prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"
Williams v. State, 596 So.2d 620, 623 (Ala.Cr.App. 1991) (quotingHill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370,88 L.Ed.2d 203 (1985)). When reviewing an ineffective assistance of counsel claim, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State,484 So.2d 531 (Ala.Cr.App. 1985).
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted).
 "We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable. . . .' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App. 1991)."
Hallford v. State, 629 So.2d 6, 9 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
We have reviewed the appellant's allegations concerning his trial counsel's performance, and none of the claims rise to the level of plain error. We have addressed many of the underlying claims in this opinion and found them to be without merit. Several of the claims concern actions by his attorneys that were consistent with the defense strategy of claiming that the appellant was under the influence of alcohol and/or drugs at the time of the commission of the offense, that he was not a bad person when he was not under the influence of alcohol and/or drugs, and that the jury should therefore have mercy on him. The appellant has not shown that counsel's performance was deficient and that the result of the proceeding probably would have been different but for counsel's challenged actions. Therefore, we find no plain error in trial counsel's performance on the grounds the appellant raises.
 XIII.
Pursuant to § 13A-5-53, Ala. Code 1975, we must address the propriety of the appellant's conviction and sentence of death. The appellant pled guilty to and was convicted of murder made capital because he committed the murders by one act or pursuant to one scheme or course of *Page 1134 
conduct. § 13A-5-40(a)(10), Ala. Code 1975.
The record reflects that the sentence of death was not imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(1), Ala. Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found two aggravating factors: 1) the appellant had previously been convicted of a felony involving the use or threat of violence to the person, § 13A-5-49(2), and 2) the murder was committed while the appellant was engaged in a robbery, § 13A-5-49(4), Ala. Code 1975. The trial court found as a statutory mitigating circumstance that the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. § 13A-5-51(6), Ala. Code 1975. The trial court also found the following nonstatutory mitigating circumstances: 1) the defendant was a good family member to his mother and siblings and 2) there was evidence of possible emotional problems brought on from the death of the defendant's brother and the defendant's subsequent feelings of guilt and remorse. The trial court specifically indicated in its order that it considered the other evidence offered by the appellant as mitigation, but found that none of it mitigated the crime. The trial court's findings show that it weighed the aggravating circumstances and the mitigating circumstances and correctly sentenced the appellant to death. The trial court's decision is supported by the record, and we agree with the trial court's findings.
Section 13A-5-53(b)(2) requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's sentence of death. After an independent weighing of the aggravating and mitigating circumstances, we conclude that the appellant's sentence to death by electrocution is the appropriate sentence.
As required by § 13A-5-53(b)(3), we must determine whether the appellant's sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. The appellant murdered, robbed, and burned two people during one course of conduct. Similar crimes are being punished with the death sentence throughout this state. Taylor v. State, 666 So.2d 36
(Ala.Cr.App.), on remand, 666 So.2d 71 (Ala.Cr.App. 1994), aff'd,666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120,116 S.Ct. 928, 133 L.Ed.2d 856 (1996); Siebert v. State, 555 So.2d 772
(Ala.Cr.App.), aff'd, 555 So.2d 780 (Ala. 1989), cert. denied,497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990); Holladayv. State, 549 So.2d 122 (Ala.Cr.App. 1988), aff'd, 549 So.2d 135
(Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575,107 L.Ed.2d 569 (1989); Fortenberry v. State, 545 So.2d 129
(Ala.Cr.App. 1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied,495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). Therefore, we find that the sentence of death was neither disproportionate nor excessive.
Finally, we have reviewed the record for jurisdictional errors occurring before or during the guilt phase of the trial, and we have searched the record for any error that may have adversely affected the appellant's substantial rights during the penalty phase of the proceedings. We have found no such errors. §13A-5-42, Ala. Code 1975; Rule 45A, Ala. R.App. P.
Accordingly, the appellant's conviction and sentence of death by electrocution are hereby affirmed.
AFFIRMED.
All judges concur. *Page 1135