BASCHAB, Presiding Judge.
The appellant, Michael Odell Jackson, was convicted of two counts of second-degree robbery, in violation of § 13A-8-42(a), Ala.Code 1975, and one count of third-degree robbery, in violation of § 13A-8-43(a)(l), Ala.Code 1975. The trial court sentenced him to serve consecutive terms of twenty years in prison on the second-degree robbery convictions, but split the sentences and ordered him to serve five years followed by five years on supervised probation. It also sentenced him to serve a consecutive term of ten years in prison on the third-degree robbery conviction, but split the sentence and ordered him to serve three years in prison followed by five years on supervised probation. The appellant did not file any post-trial motions. This appeal followed.
The victim, Jennifer Ramige, testified that she was walking toward her residence in Pine Bend Apartments around 9:00 p.m. or 9:15 p.m. on August 1, 2005, holding her sleeping two-year-old child. As she was putting her key into her door, she heard someone running behind her and turned around. Shortly thereafter, a man she later identified as the appellant rushed toward her, tugged her purse a couple of times, yanked her purse off of her arm, and ran away.
Kelvin Deeds testified that he and the appellant got together and smoked mari *932 juana one day in August 2005. He admitted that, afterward, he helped the appellant commit a robbery at Lafayette Square Apartments. He also testified that the appellant committed a second robbery at Pine Bend Apartments, but stated that he stayed in the vehicle and did not help with that robbery. Ultimately, he was charged with two counts of robbery, but pled guilty to one count of second-degree robbery.
Detective Charles Bagsby of the Mobile Police Department testified that he investigated the robbery involving Jennifer Ram-ige; that she tentatively identified the appellant in a photographic spread on August 14, 2005; and that Kelvin Deeds implicated the appellant in the robbery of Ramige. He also testified that the appellant made a statement in which he contended that Deeds robbed Ramige and that he remained in the vehicle.
I.
The appellant argues that the State did not establish a prima facie case of second-degree robbery with regard to Ramige in case number CC-06-210. Specifically, he contends that “there was no evidence that he was aided by another person actually present.” (Appellant’s brief at p. 18.)[1]
“A person commits the crime of robbery in the second degree if he violates Section 13A-8-43 and he is aided by another person actually present.”
§ 13A-8-42(a), Ala.Code 1975.
“A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
“(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
§ 13A-8-43(a), Ala.Code 1975.
This court addressed a similar situation in Fantroy v. State, 560 So.2d 1143, 1144 (Ala.Crim.App.1989), and held as follows:
“The State’s evidence, viewed in its most favorable light, shows that Robert Lynch, one of two codefendants, grabbed a purse from Mrs. Kathryn Hannon after a brief struggle. Lynch fled a distance on foot, jumped a chain link fence, and got into a white Cadillac driven by the defendant. The evidence is uncontradicted that only one person actually stole the purse and that the defendant was not physically present when that taking occurred.
“The indictment specifically charged the defendant with a violation of Ala. Code 1975, § 13A-8-42. ‘A person commits the crime of robbery in the second degree if he violates section 13A-8-43 [robbery in the third degree] and he is aided by another person actually present.’ (Emphasis added.) ‘Robbery in the second degree, § 13A-8-42, requires that at least two robbers be present.’ Commentary to § 13A-8-42. ‘Where an accomplice to a robbery acts solely as the getaway driver and participates in neither the threat of force, its use, nor the taking of property, and is not in the immediate vicinity of the robbery or so positioned as to be capable of rendering assistance to the robber, he is not “another person actually present” within the meaning of the aggravating accomplice factor of robbery, second degree.’ People v. Hedgeman, 70 N.Y.2d 533, 523 N.Y.S.2d 46, 517 N.E.2d 858 (1987) (get *933 away driver was actually present). Under the facts presented, the defendant could be guilty, as a matter of law, only of robbery in the third degree.
“The trial judge should have granted the defendant’s motion for a directed verdict of acquittal as to robbery in the second degree and should have instructed the jury on robbery in the third degree.
“Therefore, this case is remanded with directions that the defendant’s conviction for second degree robbery be set aside and that the defendant be adjudged guilty of third degree robbery and sentenced accordingly.”
Also, in Ex parte Lynch, 587 So.2d 303, 304 (Ala.1990), the Alabama Supreme Court stated, “We hold that the Court of Criminal Appeals in Fantroy correctly interpreted § 13A-8-42.”
In this case, Ramige testified that the appellant was the only person who approached her and took her purse. Also, Deeds stated that he stayed in the vehicle while the appellant went to Pine Bend Apartments and robbed another person. As in Fantroy, the State did not present evidence that the appellant was aided by another person who was actually present when he took Ramige’s purse and did not present evidence that Deeds was so positioned as to be capable of rendering assistance to the appellant. Therefore, it did not establish a prima facie case of second-degree robbery with regard to Ramige.
However, the trial court instructed the jury as follows:
“I will tell you the only difference in the laws in the State of Alabama between Robbery in the Second Degree and Robbery in the Third Degree is the third element in Robbery in the Second Degree, and that is, that the person was aided by another person who was actually present. Other than that, the elements are the same.”
(R. 375.) By convicting the appellant of second-degree robbery, the jury necessarily found him guilty of third-degree robbery. Also, the evidence presented during the trial clearly supported a conviction for the lesser included offense of third-degree robbery in that case. “Appellate courts have the ‘inherent authority to reverse a conviction while at the same time ordering an entry of judgment on a lesser included offense.’ Edwards v. State, 452 So.2d 506, 507 (Ala.Crim.App.1983), aff'd, 452 So.2d 508 (Ala.1984).” Campbell v. State, 555 So.2d 252, 254 (Ala.Crim.App.1989). Accordingly, we remand this case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of third-degree robbery and impose a sentence for that offense.
II.
The appellant also argues that the trial court erroneously prevented him from impeaching Ramige with what he alleges was a prior inconsistent statement. Specifically, he contends that the trial court should have allowed him to present testimony from his mother that, during the preliminary hearing in this case, when Ramige was asked if she recognized the appellant, she said, “ ‘Not for sure.’ ” (R. 335.)
With regard to extrinsic evidence about a prior inconsistent statement of a witness, Rule 613(b), Ala. R. Evid., provides, in part:
“Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness has been confronted with the circumstances of the statement with sufficient particularity to enable the witness to identify the statement and is afforded an opportunity to admit or to deny having made it.”
*934 In this case, the defense did not confront Ramige with the circumstances surrounding the making of the alleged statement with sufficient particularity for her to be able to identify the statement and to properly admit or deny having made the statement. In fact, when cross-examining Ramige, defense counsel did not make any reference at all to the alleged prior inconsistent statement. Therefore, the defense did not establish a sufficient predicate to present extrinsic evidence through the appellant’s mother about any alleged prior inconsistent statement Ramige made during the preliminary hearing. See Rule 613(b), Ala. R. Evid. Accordingly, the trial court did not err when it did not allow the appellant’s mother to testify about any alleged prior inconsistent statement Ramige made during the preliminary hearing.
III.
Finally, the appellant argues that “[t]he trial court erred in refusing to grant the defendant’s motion for mistrial after it was disclosed that the State failed to produce evidence of a photo spread identification involving the victim in which the victim’s identification of the defendant was ‘tentative.’ ” (Appellant’s brief at p. 30.) After the jury had been selected and sworn and the trial court had given its preliminary instructions, the following occurred:
“THE COURT: [Defense counsel], you had some motions?
“[DEFENSE COUNSEL]: Yes, Your Honor, I wanted to make a brief motion as to a Brady violation by the State, Judge. At this time, there was a photo spread involved in this case, I spoke with the witness, Jennifer Ramige, who told me that Detective Charles Bagsby approached her and showed her a photo spread that included six African-American males on it and she was able to identify my client, Mr. Jackson, as the one that was involved in the robbery. Your Honor, there’s evidence to support that, under oath, given by Detective Pierce.
“THE COURT: Okay. But what—
“[DEFENSE COUNSEL]: Your Honor, my motion is that this should be a mistrial. The photo spread was never given to the defense and I asked specifically for it in a motion for discovery. And if you’ll recall, [the prosecutor] said that day, ‘Judge, I don’t know what he’s talking about, I’ve talked to the detectives, I’ve talked to the victims, there was never a photo spread.’
“THE COURT: Okay. [Prosecutor].
“[PROSECUTOR]: Yes, Judge. That is correct and I spoke with Detective Bagsby this morning. The correct statement about what happened was this morning I spoke with one of the witnesses who did say, T think I was shown a photo spread.’ I went back to the Detective, I said, ‘[D]id you show her one?’ He said, ‘I’ve looked, I can’t find it.’ He did end up finding it. The photo spread did not positively identify his client. It was inconclusive. The witnesses here will say inconclusive. The State does not have any — any intentions on presenting that, bringing that up, it was an inconclusive photo spread. I was never given a copy of it, Judge, I—
“THE COURT: Okay. And where is the photo spread at now?
“[PROSECUTOR]: I believe it may be in the detective’s file and the witness will say she was not able to look at it and make a determination and it actually says, I believe it — does it say inconclusive or—
“THE DETECTIVE: It says tentative ID.
“[PROSECUTOR]: Yeah, could — tentatively could not ID the person.
*935 “THE COURT: What are you requesting, [defense counsel]?
“[DEFENSE COUNSEL]: Judge, that violates Brady.
“THE COURT: What are you requesting, sir?
“[DEFENSE COUNSEL]: I’m requesting that all of these cases be dismissed. The victims were shown—
“THE COURT: Are you requesting that the cases be dismissed?
“[DEFENSE COUNSEL]: Yes, Judge, with prejudice, they were shown—
“THE COURT: Under what grounds? What legal authority?
“[DEFENSE COUNSEL]: Legal authority that I offered, Judge, is that under the Brady case, the defense is entitled to all exculpatory material. Judge, you entered an order saying that they had to produce this to us by the Friday after I filed the motion and we heard the motion, Judge, they have.
“THE COURT: When did you find out the photo spread exist — existed?
“[DEFENSE COUNSEL]: Judge, I knew it existed when we had the docket, I said it to you, ‘Judge, there is a photo spread in this case, they have not produced it.’
“THE COURT: Okay. But if they violated my order and you [were] aware of that, why didn’t you bring it to the attention of the Court?
“[DEFENSE COUNSEL]: Judge, the representation by [the prosecutor] was that she had talked to the detective, she had talked to the victims, there was no photo spread.
“THE COURT: Okay. Motion to dismiss is denied.
“[DEFENSE COUNSEL]: Judge, I would further ask that the photo spread be given to us, the reason why—
“THE COURT: Yes, sir, they’ll give it to you right now.
“[PROSECUTOR]: Judge, we don’t intend — •
“THE COURT: Just a moment, please. They’ll give it to you right now, anything else you are requesting?
“[DEFENSE COUNSEL]: Yes, Your Honor, I would ask that all of the witnesses or the victims who were shown the photo spread and could not identify Mr. Jackson as the person whose done this, Judge, that’s exculpatory—
“THE COURT: Okay. What are you requesting, sir?
“[DEFENSE COUNSEL]: — that needs to be handed over as well. A list of all of the victims and the circumstances that they looked at this and—
“THE COURT: Okay. [Prosecutor], you are to furnish to the opposing counsel, any — the name of any witness that was shown that photo spread and the results of what their comments to the detective.
“[PROSECUTOR]: I will, Judge. Can I have a moment — well I don’t have any notations of any of that, we don’t have anything — my only understanding is Ms. Ramige, and it was a tentative. I will make sure and verify with them, if you’d like. Judge, the only knowledge I have is one witness who tentatively and could not identify positively as to who it was and so, therefore, the State was not intending to use it and I was just shown this, this morning and that’s the only information that I have. I will go meet with them to verify if anybody else said anything—
“THE COURT: Well, the witnesses are in the courtroom now; correct?
“[PROSECUTOR]: Yeah, and there’s no notations in the narrative regarding that.
*936 “THE COURT: Okay. Any of the witnesses present in this case was shown a photo spread other than Ms. Ramige? Okay. Please deliver the photo spread to [defense counsel]. [Defense counsel], that’s it. Anything else?
“[DEFENSE COUNSEL]: Judge, I would like the record to reflect, just so I can preserve any error for appeal, that’s possible in this case, that I did file a motion for discovery, that Brady material was specifically requested, and that Your Honor, on the date of the hearing that we had in court, said that all Brady material was to be provided to the defense from the State on the Friday after the hearing.
“THE COURT: The record speaks for itself. Anything else?
“[DEFENSE COUNSEL]: No, Your Honor.”
(R. 71-76.)
“The imposition of sanctions upon noncompliance with a court’s discovery order is within the sound discretion of the court. United States v. Koopmans, 757 F.2d 901, 906 (7th Cir.1985); United States v. Saitta, 443 F.2d 830, 831 (5th Cir.1971); Hansen v. United States, 393 F.2d 763, 770 (8th Cir.1968). Moreover, the trial court should not impose a sanction which is harsher than necessary to accomplish the goals of the discovery rules. United States v. Gee, 695 F.2d 1165, 1169 (9th Cir.1983).”
McCrory v. State, 505 So.2d 1272, 1279 (Ala.Crim.App.1986). Also,
“ ‘[t]ardy disclosure of Brady material is generally not reversible error unless the defendant can show that he was denied a fair trial. United States v. Gordon, 844 F.2d 1397 (9th Cir. 1988); United States v. Shelton, 588 F.2d 1242 (9th Cir.1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979); Ex parte Raines, 429 So.2d 1111 (Ala.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983); McClain v. State, 473 So.2d 612 (Ala.Cr.App.1985). A delay in disclosing Brady material requires reversal only if “the lateness of the disclosure so prejudiced appellant’s preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.” United States v. Shelton, 588 F.2d at 1247 (quoting United States v. Miller, 529 F.2d 1125, 1128 (9th Cir.), cert. denied, 426 U.S. 924, 96 S.Ct. 2634, 49 L.Ed.2d 379 (1976)).’
“[Coral v. State,] 628 So.2d [954,] 980 [ (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993) ].”
Ward v. State, 814 So.2d 899, 919 (Ala.Crim.App.2000).
In this case, the record does not indicate that the State intentionally suppressed the photographic spread. In fact, it does not appear that the prosecutor was ever given a copy of the photographic spread. Also, the trial court made the photographic spread available to the defense immediately after defense counsel’s motion and questioned the other witnesses as to whether they had been shown a photographic spread. Finally, the defense thoroughly cross-examined Ramige about the photographic spread and the fact that law enforcement officials classified her identification of the appellant as tentative. Under these circumstances, the appellant has not shown that he was prejudiced by the State’s late disclosure of the photographic spread or that he did not receive a fair trial as a result of the late disclosure. Therefore, the trial court did not abuse its discretion when it did not grant a mistrial on this ground.[2]
*937 For the above-stated reasons, we affirm the appellant’s convictions and sentences for second-degree robbery in case number CC-06-209 and third-degree robbery in case number CC-06-212. However, we reverse his conviction for second-degree robbery in case number CC-06-210 and remand the case to the trial court with instructions that it enter a judgment of guilty of the lesser included offense of third-degree robbery and impose a sentence for that offense. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS. 
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.

. The appellant does not challenge his remaining convictions in his brief to this court.

. To the extent the appellant argues that the State improperly questioned Ramige about *937 the out-of-court identification, his argument is not properly before this court because he did not first present it to the trial court. See Newsome v. State, 570 So.2d 703, 716 (Ala.Crim.App.1989) (noting that "[rjeview on appeal is limited to review of questions properly and timely raised at trial”).