KELLUM, Judge.
The appellant, Joshua Allen Garzarek, was convicted of arson in the second degree, a violation of § 13A-7-42, Ala.Code 1975. The circuit court sentenced Garza-rek to 15 years’ imprisonment. The circuit court ordered Garzarek to pay a $1,000 fine, $100 to the crime victims compensation fund, $11,926.76 in restitution, and court costs. Garzarek filed a timely motion for a new trial. Following a hearing, the circuit court denied Garzarek’s motion. This appeal followed.
Garzarek does not challenge the sufficiency of the evidence on appeal. Therefore, a brief recitation of the facts is all that is necessary in this case. The evidence established that Kalie Hyatt and Garzarek were involved in a romantic relationship from approximately 2008 to 2010. During their relationship, Hyatt reported several incidents of domestic violence to police. Hyatt testified that she first telephoned the police in April 2009 when Gar-zarek hit her and blackened her eye. In May 2009, Garzarek followed Hyatt to a local gasoline service station and hit Hyatt following an argument. Garzarek then brandished a gun when confronted by Hyatt’s friends. In January 2010, Garza-rek pushed Hyatt against a wall, hit her in the throat with a cellular telephone, and punched Hyatt repeatedly in her ribs. Following the January 2010 incident, Hyatt ended her relationship with Garza-rek.
When Hyatt moved out of the house she had been sharing with Garzarek and into another house, Garzarek broke into Hyatt’s house and damaged and stole her belongings. Hyatt testified that shortly after she ended the relationship, Garzarek made repeated threats to her life and *844 drove by Hyatt’s residence multiple times each day. Hyatt testified that when she confronted Garzarek about his behavior, he admitted that he broke into Hyatt’s home. In March 2010, a tire on Hyatt’s vehicle was slashed. Garzarek subsequently admitted that he slashed Hyatt’s tire and offered to pay to replace the tire. In April 2011, Garzarek repeatedly telephoned Hyatt for no reason and on one occasion sent her a text message stating “Time is on my side.” (R. 1335.)
In the spring of 2010, Hyatt began working as a bartender at the Poplar Head Bar & Grill (“the bar”). After Hyatt began working at the bar, Garzarek came to the bar on several occasions and harassed Hyatt. During one of those occasions, Shay Davis, a co-owner of the bar, ordered Garzarek to leave and banned Garzarek from returning to the establishment. Shortly thereafter, the electrical-power meter to the bar was cut. Davis, along with Jeff Baxter who was another co-owner in the bar at the time, went outside and found that the whole meter had been removed from the building and thrown into a nearby dumpster. Immediately following the power outage at the bar, B.J. Alverson, an employee of a laundromat located in the same shopping complex as the bar, observed a white male with close-cut hair near the dumpster area. The male was walking quickly away from the businesses and to a nearby residential area.
On July 15, 2010, at approximately 6:00 a.m., Gregory McCollough was driving to work when he saw smoke coming out of the area beside the laundromat and near the bar. McCollough smelled burning wood. McCollough stopped his vehicle, determined that the smoke was coming from the bar, and telephoned Emergency 911. Firefighters arrived and observed a hole in one of the glass panes in the rear window of the bar with smoke coming out of it.
After the fire was extinguished, Jon Thomas, a crime-scene technician certified in fire investigation, made an initial walk-through of the scene. The fire had been in the kitchen area. Thomas testified that he smelled what appeared to be gasoline inside the kitchen of the bar. Thomas determined that the point of origin of the fire was in the center of the floor in the kitchen where he found pieces of a green, plastic bottle. Testing conducted by the Alabama Department of Forensic Sciences revealed the presence of gasoline on the pieces. Investigators also determined that the wiring for the cable and telephone located outside the bar had been recently cut.
The morning following the fire at the bar, Hyatt received several text messages from Garzarek — one of which told her to turn on the news. Hyatt suspected Garza-rek started the fire at the. bar and met with Garzarek outside his apartment while Hyatt concealed a digital recorder to record her conversation with Garzarek. During the conversation, Garzarek told Hyatt: ‘Tour friends, family and you are going to get it. The bar was only the beginning. I am going to burn your friend’s houses, businesses and I hope this time someone gets killed. Everyone is going to get it.” (C. 300.) Hyatt recorded the conversation and turned the recorded conversation over to the police.
Garzarek testified on his own behalf at trial and denied starting the fire. Garza-rek stated that he had camped outside at his father’s house until approximately 7:00 a.m. the morning of the fire.
I.
Garzarek first contends that the circuit court abused its discretion when it allowed the substitution of Hyatt as the victim at trial and referred to her as the *845 complaining witness before the jury, thus turning an arson trial into a domestic-violence trial. Garzarek argues that the victims of the arson are, in fact, the owners of the bar, two of whom were present at trial, and that “[allowing [Hyatt] to sit at the prosecutor’s table and to be introduced as the ‘complaining witness’ prejudiced Garzarek by making an impersonal bar personable and emotional based on the domestic violence.” (Garzarek’s brief, p. 36.)
At the outset, we note that Garza-rek argues for the first time on appeal that the circuit court erred when it referred to Hyatt as the “complaining witness” during voir dire. “ ‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’” Ex parte Coulliette, 857 So.2d 793, 794 (Ala.2003) (citing Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989)). “‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’” Id. at 794 (citing Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992)). Because Garza-rek did not argue before the circuit court the propriety of the circuit court’s reference to Hyatt as the complaining witness, the issue is not properly before us for review.
Regarding Garzarek’s contention that the circuit court improperly substituted Hyatt as the victim at trial, the Alabama Crime Victims’ Court Attendance Act, §§ 15-14-50 to -57, Ala.Code 1975, permits a victim or a victim’s representative to be present in the courtroom and to be seated at the prosecution table. See Smith v. State, 838 So.2d 413, 470 (Ala. Crim.App.2002). Parties may request the exclusion of certain witnesses at trial but may not exclude “an officer or employee of a party which is not a natural person designated as its representative by its attorney.” Rule 615, Ala. R. Evid. The Advisory Committee’s Notes to Rule 615 explain that “[t]his person is to be an officer or employee of the party.” “ ‘The decision whether to exclude persons from the courtroom during trial is a matter left entirely to the trial court’s discretion.’ ” Smith, 838 So.2d at 470 (quoting Taylor v. State, 808 So.2d 1148, 1200 (Ala.Crim.App.2000)) (internal citations omitted).
In the instant case, Garzarek contends that the victim of the arson was the bar. It is undisputed that Hyatt worked at the bar at the time of the fire. -Garzarek does not allege on appeal, nor can we find any indication in the record, that the owners of the bar declined to designate Hyatt as the victim representative at trial. Furthermore, other than Garzarek’s belief that Hyatt’s presence made the crime more personal and emotional, Garzarek has not shown that he was prejudiced as a result of Hyatt’s presence at the prosecution table. See McGowan v. State, 990 So.2d 931, 970 (Ala.Crim.App.2003) (affirming the decision of the trial court to allow victim’s daughter at counsel table where, other than a vague, unsupported assertion that he was prejudiced, the defendant fails to offer argument to demonstrate how he was prejudiced). Accordingly, we hold that the trial court did not err as to this issue.
II.
Garzarek also contends that the circuit court abused its discretion by allowing the admission of evidence regarding collateral bad acts pursuant to Rule 404(b), Ala. R. Evid., without requiring the State to further show that the evidence was reasonably necessary to the government’s case.
“The admission or exclusion of evidence is a matter within the sound discre *846 tion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093,1103 (Ala.2000). This is equally true with regard to the admission of collateral-acts evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App.1998). See also Irvin v. State, 940 So.2d 331, 344-46 (Ala.Crim.App.2005). In a discussion of collateral-act evidence, this Court stated: “If the defendant’s commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible.” Saffold v. State, 494 So.2d 164 (Ala.Crim.App.1986).
Rule 404(b), Ala. R. Evid., provides:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”
The record indicates that the State filed a notice of its intent to offer collateral-acts evidence under Rule 404(b) in which the' State specifically listed, in pertinent part, the following prior bad acts on the part of Garzarek:
“1. On or about April 29, 2009, [Garza-rek] struck [Hyatt] with his hand causing a contusion.
“2. On or about May 21, 2009, at the Shell gas station on West Main Street, witnesses saw [Garzarek] hit [Hyatt]. When confronted, he brandished a gun.
“3. On or about January 10, 2010, [Gar-zarek] used force against [Hyatt], restricting her movement, shoving her, hitting her in the throat with a cell phone, and holding a pillow over her face.
“4. Between January and February 2010, [Garzarek] made repeated threats to [Hyatt] that he was going to kill her, and he rode by her residence multiple times per day.
“5. On or about February 17, 2010, [Hyatt’s] home was broken into via the front door. Subsequent statements by [Garzarek] implicate him in the burglary.
“6. On or about March 20, 2010, [Hyatt’s] tire on her vehicle had been cut. Subsequent statements by [Garza-rek] to [Hyatt] and/or her mother implicate [Garzarek].
“7. Between the time frame of approximately April 29 to April 30, 2011, [Gar-zarek] called [Hyatt] repeatedly with no intent other than to annoy, harass, and/or alarm and sent her a test message that said, ‘Time is on my side.’
“In addition, the State contends to offer evidence that [Garzarek] on June 29, 2010, removed the meter/power box to [the bar], thereby causing the power 'to go out in the establishment, soon after having an argument with [Hyatt].”
(C. 77.) Following a hearing, the circuit court granted the State’s motion to admit evidence of the above-listed incidents at trial.
In the instant case, the State argued before the circuit court and asserts again on appeal that the evidence was admissible because, the State argues, it tended to establish Garzarek’s motive for starting the fire at the bar, an exception to the Rule 404(b) prohibition against admission of evidence of a defendant’s character. The circuit court agreed with the State, finding that “the incidents of domestic vio *847 lence ... would be admissible on the issue of motive as to why Garzarek would want to start a fire at [Hyatt’s place of] employment.” (R. 11.)
“Evidence tending to establish motive is always admissible. Perkins v. State, 808 So.2d 1041, 1084 (Ala.Crim.App.1999), aff'd, 808 So.2d 1143 (Ala.2001), vacated on other ground, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002). See also 1 Charles W. Gamble, McElroy’s Alabama Evidence 70.01(12)(e) (5th ed.1996). In discussing motive, the Alabama Supreme Court has stated:
“1 “Motive is an inducement, or that which leads or tempts the mind to do or commit the crime charged.” Spicer v. State, 188 Ala. 9, 26, 65 So. 972, 977 (1914). Motive is "that state of mind which works to ‘supply the reason that nudges the will and prods the mind to indulge the criminal intent.’ ” C. Gamble, Character Evidence, [A Comprehensive Approach (1987)] at 42. “Furthermore, testimony offered for the purpose of showing motive is always admissible. It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.” (Emphasis in original, citations omitted.) Bowden v. State, 538 So.2d 1226, 1235 (Ala.1988).’ ”
“Ex parte Register, 680 So.2d 225, 227 (Ala.1994). ‘If the prior bad act falls within [the motive] exception, and is relevant and reasonably necessary to the State’s case, and the evidence that the accused committed that act is clear and conclusive, it is admissible.’ Boyd v. State, 715 So.2d 825, 838 (Ala.Crim.App.1997), aff'd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998).”
Stephens v. State, 982 So.2d 1110, 1127-28 (Ala.Crim.App.2005), rev’d on other grounds, 982 So.2d 1148 (Ala.2006), on remand, 982 So.2d 1155 (Ala.Crim.App.2006).
Contrary to Garzarek’s contention on appeal, the collateral-acts evidence introduced by the State was reasonably necessary to the State’s case. In the instant case, Hyatt described approximately six specific occasions of violence or intimidation from April 2009 to May 2011, after each of which police were called to the scene. Testimony indicated that Garzarek frequently came to the bar after Hyatt had ended her relationship with Garzarek and that Garzarek became combative when asked to leave the bar. On one such occasion, Garzarek was asked to leave the bar after harassing Hyatt and shortly thereafter the electrical-power meter servicing the bar was ripped off the building and thrown in a nearby dumpster. Each instance showed an escalating pattern of violence and intimidation on the part of Gar-zarek and established Garzarek’s motive for setting the fire at the bar where Hyatt worked. Therefore, the circuit court did not abuse its discretion in admitting the collateral-acts evidence to establish motive.
III.
Garzarek further contends that the State intentionally withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Garzarek contends that the State failed to produce photographs of the crime scene and telephone conversations recorded while Garza-rek was incarcerated awaiting trial.
It is well settled that to prove a Brady violation, the defendant must show (1) that the State withheld evidence; (2) that the withheld evidence was favorable to the defense; and (3) that the evidence was material. Ex parte Cammon, 578 *848 So.2d 1089,1091 (Ala.1991); Ex parte Kennedy, 472 So.2d 1106, 1110 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). Additionally, “evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Johnson v. State, 612 So.2d 1288, 1293 (Ala.Crim.App.1992) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Additionally,
“ ‘ “[t]ardy disclosure of Brady [v. Maryland, 373 U.S. 83 (1963),] material is generally not reversible error unless the defendant can show that he was denied a fair trial. United States v. Gordon, 844 F.2d 1397 (9th Cir.1988); United States v. Shelton, 588 F.2d 1242 (9th Cir.1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979); Ex parte Raines, 429 So.2d 1111 (Ala.1982), cert. denied, 460 U.S. 1103,103 S.Ct. 1804, 76 L.Ed.2d 368 (1983); McClain v. State, 473 So.2d 612 (Ala.Cr.App.1985). A delay in disclosing Brady material requires reversal only if ‘the lateness of the disclosure so prejudiced appellant’s preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.’ United States v. Shelton, 588 F.2d at 1247 (quoting United States v. Miller, 529 F.2d 1125, 1128 (9th Cir.), cert. denied, 426 U.S. 924, 96 S.Ct. 2634, 49 L.Ed.2d 379 (1976)).”
“ ‘[Coral v. State,] 628 So.2d [954,] 980 [ (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993) ].’
“Ward v. State, 814 So.2d 899, 919 (Ala. Crim.App.2000).”
Jackson v. State, 969 So.2d 930, 936 (Ala. Crim.App.2007).
A.
Garzarek contends that the State improperly withheld recordings of telephone conversations that took place while he was incarcerated in the county jail.
“ ‘In Brady [v. Maryland ], 373 U.S. [83] at 87, 83 S.Ct. [1194] at 1196-97 [ (1963) ], the Supreme Court held that “the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” ... The Supreme Court of the United States in United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)(plurality opinion by Blackmun, J.), defined the standard of materiality required to show a Brady violation as follows: “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” See also Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); Stano v. Dugger, 901 F.2d [898] at 899 [ (11th Cir.1990) ]; Delap v. Dugger, 890 F.2d [285] at 299 [ (11th Cir.1989) ]; Coral v. State, 628 So.2d 954 (Ala.Cr.App.1992); Thompson v. State, 581 So.2d 1216 (Ala.Cr.App.1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
“ ‘The same standard of materiality and due process requirements apply whether the evidence is exculpatory or for impeachment purposes. United States v. Bagley; Giglio v. United *849 States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Ex parte Womack [, 435 So.2d 766 (Ala.1983) ]. “When the ‘reliability of a given witness may well be determinative of guilt or innocence,’ nondisclosure of evidence affecting credibility falls within the general rule.” Giglio, 405 U.S. at 154, 92 S.Ct. at 766 (quoting Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). In short, due process requires the prosecution to disclose material evidence, upon request by the defense, when that evidence would tend to exculpate the accused or to impeach the veracity of a critical state’s witness.’ ”
Belisle v. State, 11 So.3d 256, 295 (Ala. Crim.App.2007) (quoting Williams v. State, 710 So.2d 1276, 1296-97 (Ala.Crim.App.l996))(emphasis added).
The record indicates that during the cross-examination of Garzarek, the prosecutor moved to introduce audio recordings of telephone calls made by Garzarek to his mother while he was in jail awaiting trial. During the telephone calls, Garzarek and his mother discussed, among other things, whether Garzarek’s father would provide an alibi for Garzarek on the night of the fire. The evidence was neither exculpatory nor useful for impeaching the veracity of a witness for the State. Instead, the evidence was used by the State to impeach .Garzarek’s testimony.
Furthermore, Rule 16.1(a), Ala. R.Crim. P., requires the State to disclose to the .accused those “statements made by the defendant to any law enforcement officer, official, or employee.” “A defendant’s statement to a private citizen is not within the purview of Rule 16.1 and need not be disclosed.” Acklin v. State, 790 So.2d 975, 1001 (Ala.Crim.App.2000)(quoting Ford v. State, 628 So.2d 1068, 1071 (Ala.Crim.App.1993)). Because Garzarek made the statements to his mother and not to a law-enforcement officer, official, or employee, the State was not required to disclose the telephone conversations under Rule 16.1.
Garzarek also challenges the propriety of recording his telephone conversation because, he argues, doing so undermines his right to counsel. In Teat v. State, 636 So.2d 697 (Ala.Crim.App.1993), this Court held that, although a prisoner does not necessarily give up all constitutional rights during his or her incarceration, a prisoner has no reasonable expectation of privacy in telephone conversations at a penal institution. Because Garzarek did not have a reasonable expectation of privacy during his telephone conversation, the admission of his telephone conversation did not violate any of his constitutional rights, including his right to counsel. Teat, 636 So.2d at 699. Consequently, Garzarek is not entitled to relief on this claim.
B.
Garzarek also contends that the State failed to provide photographs of the crime scene taken by Captain Thomas Groom, a Dothan fire marshal. The record indicates that Garzarek was provided with photographs of the crime scene taken by crime-scene technician Jon Thomas. At the hearing on Garzarek’s motion for a new trial, however, Garzarek identified 10 photographs that he did not receive — 6 photographs of vehicles parked in the parking lot of the bar and 4 photographs of the kitchen area inside the bar. Garza-rek maintained that the photographs of the vehicles supported his theory that someone else committed the arson and that the photographs of shelving in the kitchen area disproved that the fire originated in the center of the floor.
*850 This Court has held that “ ‘[e]vidence is not ‘suppressed’ if the defendant either knew ... or should have known ... of the essential facts permitting him to take advantage of the exculpatory evidence.’ ” Freeman v. State, 722 So.2d 806, 811 (Ala.Crim.App.1998) (quoting Carr v. State, 505 So.2d 1294, 1297 (Ala.Crim.App.l987))(in-ternal quotations and citations omitted). The record indicates that Garzarek received a copy of an incident report prepared by Captain Groom which indicated that Captain Groom had photographed the crime scene. In his report, Captain Groom stated:
“Above the freezer were two approx. 4 ft. shelves that stored new unused ashtrays, plastic straws and receipt books. Took photos of debris and rest of kitchen. The freezer showed signs of heat damage but no signs of direct fire.”
(C. 294-95.) Therefore, the evidence to which Garzarek refers was not, in fact, suppressed by the State.
Furthermore, Garzarek has not demonstrated that the photographs were material to his defense. In order to find a Brady violation, the evidence must be both exculpatory and material and tend to disprove a fact issue material to guilt or punishment. Brady, supra. As to materiality, Garzarek has the burden of establishing “a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.” Pritchett v. State, 600 So.2d 898, 899 (Ala.Crim.App.1992). Garzarek has failed to meet his burden in this case. Accordingly, Garzarek is not entitled to relief on this claim.
IV.
Garzarek next contends that his right to a fair trial was violated when he was displayed before the jury in the custody of the sheriffs department. Specifically, Garzarek claims that error occurred when jurors saw him being escorted out of an inmate-transport van as the jurors were heading to the courtroom to start the third day of trial.
Immediately before the start of trial on the third day, the following occurred:
“THE COURT: They’re bringing prisoners up on Garzarek and some other people that I need to see briefly. But, obviously, with the sheriffs office running like they did — all my jurors were here on time. So, they just all saw Mr. Garzarek getting out of, I guess, a van or patrol car with the deputies. So, they know he’s in custody.
“I did go ahead and tell them. Because I was back there telling them that we were waiting a minute to get started back. And a couple of the jurors on the wall in the jury room, you know, tell me that.
“And, of course, I told them — I said you can’t — they asked me — they said, ‘Is he in jail?’ And I told them — I said, T really don’t want to comment on that.’ I said, ‘But you can’t hold that against him in any way regardless of whether he’s in jail or on bond.’
“And then another juror mentioned— he says, ‘Well, I figured he was because he’s been wearing the same thing to court every day.’ Which, you know, I can’t control what they may speculate on things like that.
“But, anyway, I want to make that known. I didn’t go into any further detail with them about it. I wanted to talk to you all. And if you want me to give them some sort of instruction further on the record, I’ll be happy to do that.
“[DEFENSE COUNSEL]: Well, Judge, that’s a bell that you can’t unr-ing. If there are suspicions regarding *851 his clothing is one thing. But it’s kind of hard to — I mean, once they see him actually getting out of a van, in custody, I mean, there is no doubt. There’s no speculation to that.
[[Image here]]
“THE COURT: Well, my preference is to go ahead — but I wanted to talk to you two first — is to explain it to them and then poll them individually. I’ll be honest. When they mentioned it, I immediately told them that they couldn’t hold it against him. That there could just be a multitude of reasons, often unrelated to anything that concerns them, as to why a prisoner is on trial. And they did indicate that it wouldn’t be a problem for them.
“I think what I would prefer to do is go ahead and tell them and attempt to give them an instruction, and then poll them individually and just see where we are.
[[Image here]]
“THE COURT: I mean, how many times do you tell them to where it becomes you’re just putting a red light over a particular issue that just brings further attention. But, at the same time, you want to make sure that a lay juror can separate out the two issues.
“But my preference is to go ahead and talk to them on the record, in court, with everyone present, poll them. I’ll be honest. At this point in the case — and I understand what the evidence is. We all know what additional evidence there will be. But, technically, after two days of trial, there hasn’t been any evidence to link this defendant to this crime.
“So, at this point, you know, I’ll submit to you that I think they’re very open about the ease. I do understand that there’s going to be some incriminating evidence that will probably come out today. More incriminating evidence.
“But my thought is go ahead and do this. Let’s finish this — and assuming— and I’m not granting that they’ll feel that way. But I think, you know, to look a juror in the eye is just like during individual voir dire.”
(R. 584-90.) Following a brief break, the circuit court gave a curative instruction and polled the jury regarding whether they could put aside their knowledge that Garzarek was in custody, and “be open and fair minded and ... follow the law.” (R. 602.) Each juror answered in the affirmative. When the court asked if there were any objections, the prosecutor questioned whether the jury should have been instructed regarding/a juror’s concern about the length of time Garzarek has been in jail. After both sides agreed that no instruction was necessary, Garzarek made the following motion:
“And that’s fíne. And I don’t have a problem with that. And I don’t have a problem with what [the prosecutor is] asking for. Since we’re here [at the bench], we still object to it. I think it is a totality issue because of the nature of the State’s evidence in trying to prove its case., I think it does rise to the level of extreme prejudice, and we’ll ask for a mistrial.”
(R. 606.)
To the extent Garzarek challenges the circuit court’s denial of his motion for a mistrial, we question whether this issue has been properly preserved for review. “Timely objections must be made to preserve an assignment of error for appellate review, and the objection should, be made as soon as the objectionable ground becomes apparent.” Perkins v. State, 715 So.2d 888, 894 (Ala.Crim.App.1997). It is well settled that “[t]o be timely, a motion for a mistrial must be made immediately after the grounds alleged to *852 warrant the mistrial become apparent.” Culver v. State, 22 So.3d 499, 518 (Ala.Crim.App.2008). See also Sale v. State, 8 So.3d 330, 340 (Ala.Crim.App.2008); Maples v. State, 758 So.2d 1 (Ala.Crim.App.), aff'd, 758 So.2d 81 (Ala.1999). In this case, Garzarek moved for a mistrial after the circuit court notified the parties that the jurors had seen Garzarek in police custody, provided a curative instruction to the jury, and polled the jury. Because Garza-rek’s motion for a mistrial was not timely, this issue is not properly before this Court for review.
Moreover, even if Garzarek had timely moved for a mistrial, he would not be entitled to relief. “A mistrial is a drastic remedy that should be used sparingly and only to prevent manifest injustice.” Hammonds v. State, 777 So.2d 750, 767 (Ala.Crim.App.1999) (citing Ex parte Thomas, 625 So.2d 1156 (Ala.1993)), aff'd, 777 So.2d 777 (Ala.2000). A mistrial is the appropriate remedy when a fundamental error in a trial vitiates its result. Levett v. State, 593 So.2d 130, 135 (Ala.Crim.App.1991). “The decision whether to grant a mistrial rests within the sound discretion of the trial court and the court’s ruling on a motion for a mistrial will not be overturned absent a manifest, abuse of that discretion.” Peoples v. State, 951 So.2d 755, 762 (Ala.Crim.App.2006). The circuit court’s prompt response to the jurors’ exposure to seeing Garzarek in police custody, the curative instructions given by the circuit court, and the circuit court’s subsequent polling of the jury following those instructions eliminated any prejudice that possibly occurred after jurors saw Garza-rek exiting a police vehicle. Therefore, the circuit court did not abuse its discretion in denying Garzarek’s motion for a mistrial.
Furthermore, the record in this case does not indicate whether Garzarek was dressed in prison garb when the jurors saw him, whether he was being escorted with other prisoners, or whether he was restrained by handcuffs or shackles. Thus, Garzarek has not demonstrated that he was denied a fair trial merely because jurors briefly saw him in custody. See Hutcherson v. State, 677 So.2d 1174, 1182 (Ala.Crim.App.1994), rev’d on other grounds, 677 So.2d 1205 (Ala.1996)(noting that “a prison uniform is merely another symbol that an accused is in police custody” and a “brief and inadvertent confrontation” between the jury and the accused is an insufficient showing of prejudice to warrant a mistrial). Accordingly, Garza-rek is not entitled to relief on this claim.
V.
Finally, Garzarek contends that he was denied his right to a fair trial when the State deliberately called Patrick Walker as a witness, whom the State knew would give hearsay testimony, and that the circuit court should have granted his motion for a mistrial on this basis. Garzarek argues that the State called Walker to testify only so that the State could then impeach Walker’s testimony.
The record indicates that the State called Walker as a witness at trial. During Walker’s testimony, the following occurred:
“Q. [PROSECUTOR]: Would you tell the ladies and gentleman of the jury, did you ever have a conversation with Josh Garzarek about he was going to burn the bar?
“A. No.
“Q. You deny that?
“A. Yes.
“Q. Okay. Now, let me ask you this: You have had traffic tickets and been put in jail? Correct?
“A.. Yes.
[[Image here]]
*853 “Q. Okay. Well, let’s go, if we could — did you ever have a conversation with your mother, and Mike Estress present, about where Josh Garzarek called you up and said he was going to burn the bar, and you told him emphatically he didn’t need to do that, he didn’t need to make that mistake, and not—
“[DEFENSE COUNSEL]: I’m going to object to all this. It’s improper. He’s called a witness in his case in chief for apparently the only purpose of trying to impeach him. It’s an improper method, and we object.”
(R. 1051-54.)
Following a lengthy discussion during which the prosecutor told the circuit court that it would not ask Walker any further questions regarding Walker’s conversation with Garzarek about the fire at the bar, the circuit court held that it would allow Walker to “testify to what he admits to between him and Mr. Garzarek” but that, if he denied the conversation with Garza-rek took place, the prosecutor could not call a witness to impeach Walker. (R. 1090.) The circuit court informed the parties that it would instruct the jury to disregard the previous line of questioning about any alleged statement Garzarek may have made to Walker about the fire. Thereafter, the circuit court instructed the jury as follows:
“THE COURT: Ladies and gentlemen, when we broke, there had been some objection. This witness was asked about an alleged statement that was made by the defendant, Joshua Garza-rek, to him, along the lines that I guess could be understood as some sort of admission that he set fire to [the bar]. This witness has denied that Mr. Garza-rek made that statement to him.
“What I need to instruct you is you need to completely disregard that. It’s not been proven. The witness has denied it. So, as far as you’re concerned, that question was never asked. Is everyone able to do that?
(Whereupon, members of the jury responded affirmatively.)
“THE COURT: Yes? You need to tell me if you think that may weigh in your mind. At this point, again, like I told you when we began, the only evidence that you will hear is what witnesses, under oath, testify to. Statements that the attorneys make is not evidence in this case. So, does everyone understand that? The witness has not stated that that that is a correct statement. So, you. need to completely disregard it.”
(R. 1092-93.)
“ ‘The grant or denial of a mistrial is a matter within the sound discretion of the trial court, and its ruling will be disturbed only if an abuse of that discretion is shown.’ ” Culver v. State, 22 So.3d 499, 518 (Ala.Crim.App.2008) (quoting J.E. v. State, 997 So.2d 335, 341 (Ala.Crim.App. 2007)).
“The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied.’ Woods v. State, 460 So.2d 291, 296 (Ala.Crim.App.1984); Chillous v. State, 405 So.2d 58 (Ala.Crim.App.1981).”
Wilson v. State, 777 So.2d 856, 919 (Ala.Crim.App.1999) (citations omitted).
Following the objectionable testimony, the circuit court prevented the State from questioning Walker further regarding his conversation with Garzarek about burning the bar. The State was also not allowed to impeach Walker’s denial with a prior inconsistent statement, and the impeachment evidence the State proposed to introduce at trial was never admitted into *854 evidence. The circuit court promptly instructed the jury to disregard the State’s question and Walker’s testimony. The court then questioned the jury to determine whether they could, in fact, disregard the State’s question and Walker’s response, whereupon members of the jury responded in the affirmative.
Generally, “prejudicial statements, even though improper, are considered capable of being eradicated by the trial court sustaining objections thereto or by appropriate instructions to the jury or both.” Walker v. State, 932 So.2d 140, 153 (Ala.Crim.App.2004) (internal quotations and citations omitted). The circuit court’s instruction cured whatever prejudice might have resulted from the improper question by the State and ensuing response from Walker in light of the fact that the jury is presumed to follow the circuit court’s instructions. See Calhoun v. State, 932 So.2d 923, 965 (Ala.Crim.App.2005) (‘We presume that the jury follows the circuit court’s instructions.”).. Because the circuit court prevented the State from presenting evidence to impeach Walker’s testimony and the circuit court cured whatever prejudice may have resulted through its oral instructions to the jury, the circuit court did not abuse its discretion when it denied Garzarek’s motion for a mistrial. Accordingly, Garzarek is entitled to no relief on this claim.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.